## BLOOMSBURG STEAM CO. v. B. F. GARDNER.

ERROR TO THE COURT OF COMMON PLEAS OF COLUMBIA
COUNTY.

Argued April 16, 1889—Decided April 29, 1889.
[To be reported.]

(*a*) A heat and light company, when a street main was completed, removed barriers erected to protect the public from the danger of the open trench, and while the plaintiff was driving of a dark night upon the street lately so opened, his horse fell into a transverse trench made for a service pipe and left open by the workmen, causing the plaintiff severe injuries.

1. In such case, all the facts involving the questions of negligence on the part of the defendant, and of contributory negligence on the part of the plaintiff, being controverted, the case was properly left to the jury under correct instruction that if the negligence of the plaintiff contributed in any degree to the injury, he could not recover.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and
MITCHELL, JJ.

No. 4 January Term 1889, Sup. Ct.; court below, No 129
December Term 1886, C. P.

On December 4, 1886, Dr. B. F. Gardner brought an action in case against the Bloomsburg Steam & Electric Light Co., to recover damages for personal injuries charged to the negligence of the defendant company. Issue.

At the trial on May 15, 1888, the facts appearing were in substance as follows :

On October 21, 1885, the defendant company (then organized and on December 7, 1885, incorporated under act of April 29, 1874, P. L. 73, for the supply of light and heat to the public) obtained from the corporate authorities of the borough of Bloomsburg a permit to " lay steam pipes on the streets of Bloomsburg that the Steam Company may decide to extend their pipes over." This permit was granted upon certain conditions specified in it, the sixth and last of which was as follows: " All openings which may be made in the public streets or ways must be closed with sufficient barriers and

must maintain red light at the same at night, and must take all other necessary precautions to guard the public effectually against all accidents from the beginning to the end of the work."

The work of ditching the streets and laying its mains, was begun by the defendant company soon afterward, continued until the winter set in, resumed in the spring following, and in September, 1886, the defendant company was at work upon Iron street, running nearly north and south, and between the points where it is crossed by Fourth and Fifth streets, running nearly east and west.   Fourth street is north of Fifth street.

While the trench for the main pipe was being made on Iron street, near the middle of the street, the dirt was thrown upon the east side of the trench, and, the pipes, bricks and other material being placed on the west side of the trench, the street was rendered impassable, and barriers were erected at the Fifth street crossing, and also a little south of the crossing at Fourth street.   While the trench was open lights were placed along it at night, one at the north end, one in the middle, and one at or near the Fifth street barrier.

When the main had been laid and the trench filled, which was a few days before September 30, 1886, the barriers referred to were removed, and travel was resumed upon the west side of the street, the distance from the fill of the trench to the curbstone being about twenty feet.   The testimony was conflicting as to how much of this width was passable.   Whether the east side of the street was passable or not, the testimony was also conflicting.

On the morning of September 30, 1886, a transverse trench for a service pipe to the residence of Richard Stiles on the east side of the street was made, the service pipe placed, and the trench filled.   In the evening of the same day, a transverse trench for a service pipe to the residence of Peter Harman on the west side of the street was made.   This trench left the main pipe a little south of a "variator" placed in the main, and when left incomplete at night had extended about 10 feet from the main trench toward the curb, was about 18 inches in width, and at the main trench was about $2\frac{1}{2}$ feet in depth, and at the end toward the curb about 18 or 20 inches deep.   The dirt from this transverse trench had been thrown upon the

north side of it, and formed an embankment the height of
which was controverted. When the workman quit for the
night, a light was left to show the position of the trench. This
light was an ordinary lantern, but whether the light was clear
and distinct, or whether it was obscured by an uncleaned glass
was disputed in the testimony. The lantern was placed upon
the head of a barrel, but whether the barrel was placed upon
the embankment midway the transverse trench, as testified by
defendant's witnesses, or whether it was at the fill of the main
trench, as testified by witnesses for the plaintiff, was a question
much controverted. ' On the part of the plaintiff, it was
claimed from the testimony that the light of the lantern, wher-
ever it was, was obscured not only by a smoked globe, but by the
barrel beneath it; on the part of the defendant, that it afforded
a clear view of the trench.

Dr. Gardner, the plaintiff, had passed over the street, on the
west side of it, several times in the two or three days preceding
September 30th, and, as he thought, on the morning of that
day. Between 8 and 9 o'clock on the evening of that day, the
plaintiff started to see a patient, and driving down from
Fourth street on the west side of the street, his horse fell into
the open transverse trench, throwing him from his carriage and
inflicting upon him permanent injuries. The speed at which
he was driving was a controverted question.

At the close of the testimony, the court, ARCHBALD, P. J.
of the 45th judicial district, holding special term, submitted to
the jury with pertinent instructions as to the law, the question
of negligence on the part of the defendant and of contributory
negligence on the part of the plaintiff, and answered the points
presented as follows:

The parties have asked me to charge you upon certain mat-
ters which they conceive to be the law. I will now read the
points, first of the plaintiff and then of the defendant, with my
answers to them. First, the plaintiff's points:

1. That the neglect of the defendant steam company to com-
ply with the regulations prescribed by the town council of the
town of Bloomsburg for the protection of public travel, as set
out in the permit under which the pipes of defendant were laid
in the streets of said town, was a culpable omission; and the

Charge of Court below.

carelessness of plaintiff which would excuse it, would have to be of a very gross character, clearly proven.

Answer: You see this asks me, not to declare what inference you may draw from the facts, but to charge you that this is the law. I cannot do that. An inference from the facts, such as is here suggested, might be drawn by you; but I cannot affirm it as a legal proposition; therefore, I refuse it.[10]

2. That, the uncontradicted statement being that the barrier at Fourth street had been removed by defendant several days prior to the 30th September, 1886, and the public permitted and invited to use Iron street for the purposes of travel; and, it being testified by A. Z. Schoch, president of the defendant steam company, that the barrier was removed at the time aforesaid; and, it being shown that the public, of whom plaintiff was one, did use the west side of Iron street in safety up to the afternoon of September 30, 1886; and, said president of defendant steam company having testified that, about five o'clock in the afternoon of September 30, 1886, he set men to digging the lateral ditch across the west side of Iron street into which ditch plaintiff fell, and that at that time he caused the route for travel to be changed to the east side of said Iron street, but did not barricade the dangerous west side of said Iron street in the manner required by the town council of the town of Bloomsburg in the permit under which the defendant company's pipes were laid; therefore the defendant was guilty of negligence.

Answer: That, again, asks me to charge you as matter of law that these things constituted negligence. You may infer from the facts here stated, as matter of fact, that the defendant company were guilty of negligence, but it is not my province to dictate to you what you shall find; so I refuse the point

3. That, if the jury believe from all the evidence in the case that the light placed at the transverse ditch on Iron street on the night of September 30, 1886, by the defendant, was an insufficient protection and calculated to deceive the traveling public into still using the west side of Iron street for travel, when in reality there was danger, and if the jury believe that the plaintiff was misled by the acts of defendant and thrown off his guard, then it is such wrongful act on the part of the defendant,

that contributory negligence is not to be considered by them and the plaintiff should recover.

Answer: I refuse this point.

4. That, if the jury believe from all the evidence in this cause that the plaintiff was traveling Iron street by the invitation of the defendant in removing the barriers at Fourth street, and that the west side of Iron street had been used by the public and the plaintiff up to the night of September 30, 1886, with safety; and that, in driving the west side of said street, he was endeavoring to avoid a known danger, viz.: the east side of said street, and by the act or fault of the defendant was led into an unknown danger, viz.: the lateral ditch across the west side; then the plaintiff should recover.

Answer: For the reasons which I have given you already, I must refuse this point.

5. That, if the jury believe that the plaintiff exercised ordinary care in driving upon Iron street upon the night of the accident, under all the circumstances of the case, he is entitled to recover if the jury also believe that the defendant was negligent.

Answer: This is correct; I affirm it.[11]

6. That, the uncontradicted evidence being that the individual incorporators of the Bloomsburg Steam & Electric Light Company had associated themselves together, for the purpose named in the articles of association, upon October 17, 1885; and that, pursuant to the object of said association, an organization was effected by the election of officers and by compliance with such other requisites as are prescribed by the act of assembly of April 29, 1874, and its several supplements; and that letters patent were thereupon granted by the commonwealth to the said incorporators; and that, after being so clothed with corporate powers, they did complete the contract entered into with the American District Steam Company for the erection of their works and the completion of their plant, the association and the corporation are one and the same organization, and the application made to the town council of the town of Bloomsburg for a permit to erect buildings and to occupy the streets for digging and excavating earth for the purpose of putting down pipes, granted to them by said town council, is binding upon the Bloomsburg Steam & Electric Light Company, defendant; and it was incumbent upon them to comply with the pre-

Charge of Court below.

scribed regulations, no evidence having been introduced or offered by them to show that such regulations were unreasonable or illegal; and that the defendants, having failed to comply with such regulations, are guilty of negligence; that they were bound to exercise their authority as innocently as possible, and to take especial precaution that no one should receive injury therefrom in the night time.

Answer: As a whole, I cannot affirm this point. It is undoubtedly true, as stated in the last part of the point, that the defendant company was bound to exercise its authority as innocently as possible and to take especial precaution that no one should receive injury therefrom in the night time; but, having to accept the point just as it is drawn by counsel, I must refuse it.[12]

I have already affirmed the plaintiff's seventh point, but I will read it again to you:

7. That, if the plaintiff is entitled to recover, he is entitled to recover for the direct expenses resulting from the injury; for the inconvenience he is subjected to; for pain suffered, bodily and mental, that he has endured or is likely to endure; for pecuniary loss sustained and likely to be sustained; and for his actual loss of earning power.

Answer: This is correct; and I affirm it.

8. That it is not contributory negligence to pass over a highway, even if known to be dangerous, provided due and reasonable care be used.

Answer: It may or it may not be contributory negligence to pass over a known dangerous highway, but that will depend upon the circumstances; it may vary; the question may depend upon the extent and character of the danger, and whether it could be avoided by going some other equally safe way: I must, therefore, refuse this point.

I now turn to the defendant's points:

1. That, the plaintiff having shown that he was guilty of negligence contributing to the accident, he cannot recover and the verdict of the jury must be for the defendant.

Answer: This asks me to take the question from you, and to decide it myself, saying that the plaintiff has shown contributory negligence. I cannot do that: the question is for your determination, and not for mine; I refuse the point.[13]

2. That, if the jury believe that the plaintiff, on the night of the accident, saw the light placed by defendant as a danger signal on the embankment along the ditch into which plaintiff drove; and that plaintiff, instead of heeding the signal, acted upon a mistaken idea of the situation of the highway, and thereby drove into the ditch; he was guilty of contributory negligence, and the verdict must be for the defendant.

Answer: I cannot affirm this point.[14]

3. That, if the jury believe that defendant, after excavating the ditch into which plaintiff drove, placed a barrier of earth outside of said ditch upon the north side thereof, which barrier extended the entire length of the ditch and was from two and one half to three feet in height and some five or six feet in width at the base, and upon which they placed a lighted lantern which plaintiff saw as he approached the ditch from the north; then defendant was not guilty of negligence, and plaintiff cannot recover.

Answer: These are questions for you, and not for me, to decide; I refuse the point.[15]

4. That, the plaintiff having shown that he failed to exercise proper care, in passing on a dark night over a highway that he knew was being occupied by the defendant for the purpose of performing its work in laying its steampipes thereunder, he was guilty of contributory negligence, and the verdict must be for the defendant.

Answer: This has much the same phase with the others; it asks me to take the question from you, and to decide as matter of law that the acts of the plaintiff were negligent and contributed to the accident. I cannot say so, and I must refuse the point. I have already, however, endeavored to explain to you in my general charge what bearing the facts recited in this point have upon the question of fact which you are to decide, to wit: whether the plaintiff was negligent or not.[16]

5. That, if the jury believe, under all the evidence in the case, that the plaintiff within three days of the accident or on the morning of the same, traveled along and upon Iron street where the work was being performed and while the street was in an unfinished and unsettled condition; and that on the evening of the accident the earth from the cross ditch into which he drove was thrown out upon the north side of the

ditch, forming an embankment two and one half to three feet high and five or six feet broad at the base, and extending the entire length of the ditch upon which, and near the middle of the same, was placed a barrel with a lighted lantern thereon; and if the jury believe that the plaintiff approached the ditch on the side thus obstructed and lighted, on a " good trot," and that he failed to stop and look or to take another route which he knew to be safe and as near, then he was guilty of contributory negligence, and he cannot recover.

Answer: I refuse this point.[17]

6. That the plaintiff having shown that he knew the defendants were laying their pipes on Iron street between Fourth and Fifth streets and were working at the same the last time he passed over that street, and knowing another and safer route that would avoid traveling over said part of Iron street, it was negligence for him to attempt to drive over that part of Iron street on the night of the accident, and he cannot recover in this case.

Answer: The question of the plaintiff's negligence, as I have already many times said, is for you and not for me; and I refuse this point.[18]

7. That, the plaintiff having shown that for some six or eight days immediately preceding the day of the accident, defendant had been occupying that part of Iron street between Fourth and Fifth streets for the purpose of laying its pipes, and by reason of such work had rendered the same unsafe and dangerous for driving, and that plaintiff had knowledge of this condition of said highway and had another and safe route to his point of destination; it was negligence in plaintiff to attempt to pass over the said highway thus occupied by defendant, and plaintiff cannot recover in this suit.

Answer: I refuse this point.[19]

8. That if the jury believe that the plaintiff by any negligent act or any omission of duty contributed to the accident, he cannot recover, notwithstanding there may have been negligence on the part of the defendant.

Answer: That is I have already endeavored to instruct you, and I affirm this point.

9. That, under all the evidence, the verdict must be for the defendant.

Answer: This I cannot affirm.[20]

10. That the plaintiff having shown that an embankment was thrown up on the north side of the ditch, along its entire length, from two and one half to three feet in height, and from five to six feet in breadth at the base, upon which and near the middle was placed a barrel, with a lighted lantern on top of it, and that the plaintiff had good eyesight, common prudence enjoined upon him the duty to see the light and to heed its warning.

Answer: Refused.[21]

11. That, under all the evidence in the case, if the plaintiff failed to see the light and other warnings of danger placed upon the street, it is evidence of the lack of common prudence on the part of the plaintiff not to have seen the lantern and other warnings of danger.

Answer: Refused.[22]

12. That, under all the evidence in the cause, common prudence made it the duty of the plaintiff to have seen the lighted lantern and other warnings of danger as mentioned in the evidence.

Answer: Refused.[23]


The jury returned a verdict in favor of the plaintiff for $15,000. A rule for a new trial having been discharged, judgment was entered upon the verdict, when the defendant took this writ, assigning as errors, inter alia:

10–12. The answers to the plaintiff's points.[10 to 12]

13–23. The answers to the defendant's points. [13 to 23]


*Mr. H. M. Hinckley* (with him *Mr. Grant Herring* and *Mr. L. S. Wintersteen*), for the plaintiff in error:

Upon the question of contributory negligence on the part of the plaintiff, counsel cited: Barnes v. Sowden, 119 Pa. 60; Baker v. Fehr, 97 Pa. 72; Carlisle v. Brisbane, 113 Pa. 554; King v. Thompson, 87 Pa. 369; Hoag v. Railroad Co., 85 Pa. 297; Beatty v. Gilmore, 16 Pa. 467; Easton Bor. v. Neff, 102 Pa. 478; Reeves v. Railroad Co., 30 Pa. 464; Goshorn v. Smith, 92 Pa. 438; Railroad v. Norton, 24 Pa. 469; Krum v. Anthony, 115 Pa. 435; Monongahela City v. Fischer, 111 Pa. 13; Catawissa R. Co. v. Armstrong, 49 Pa. 187;

Beach on Contributory Negligence, 257, 259; Crescent Tp. v.
Anderson, 114 Pa. 643; Altoona City v. Lotz, 114 Pa. 238;
Forks Tp. v. King, 84 Pa. 233; Erie City v. Magill, 101 Pa.
618; Del. etc. R. Co. v. Cadow, 120 Pa. 559; Pittsb. South.
Ry. Co. v. Taylor, 104 Pa. 306; West Chester etc. R. Co. v.
McElwee, 67 Pa. 315; Schum v. Railroad Co., 107 Pa. 12;
Jacobs v. Bangor, 33 Amer. Dec. 654.

*Mr. James Scarlet* and *Mr. C. R. Buckalew* (with them *Mr.
L. E. Waller* and *Mr. C. W. Miller*), for the defendant in
error:

1. On the subject of defendant's liability for negligence,
counsel cited: Wharton on Neg., § 420, n. 5; West Chester
etc. R. Co. v. McElwee, 67 Pa. 311: Wood, Mast. & Serv.,
624; Penn. R. Co. v. Ogier, 35 Pa. 60; F. & B. Turnpike
Co. v. Railroad Co., 54 Pa. 345; Cooley on Torts, 630, 660;
McGrew v. Stone, 53 Pa. 436; 2 Dillon on Mun. Corp.,
§ 1005; Lower Macungie Tp. v. Merkhoffer, 71 Pa. 280; Wade
on Notice, 272; Susquehanna Depot v. Simmons, 112 Pa. 388;
Hydraulic Works Co. v. Orr, 83 Pa. 332; Hey v. Philadelphia,
81 Pa. 50; Carlisle v. Brisbane, 113 Pa. 553; Black on Acci-
dent Cases, 103.

2. On the question of the plaintiff's contributory negligence,
counsel cited: Beach on Contributory Negligence, 7, 71–2;
Phila. etc. R. Co. v. Hagan, 47 Pa. 248; Penn. R. Co. v. Ogier,
35 Pa. 72; McKee v. Bidwell, 74 Pa. 218; Cooley on Torts,
669–70, 674–5; Waters v. Wing, 59 Pa. 211; Reeves v. Railroad
Co., 30 Pa. 454; Penn. R. Co. v. Lewis, 79 Pa. 33; Erie City
v. Magill, 101 Pa. 616; Mill Creek Tp. v. Perry, 10 Cent. R.
299; Lower Macungie Tp. v. Merkhoffer, 71 Pa. 280.

OPINION, MR. CHIEF JUSTICE PAXSON:

A careful examination of this record discloses no substantial
error. The assignments are numerous, mostly relating to the
charge of the court. The only portion of it which is not free
from criticism is the answer to the plaintiff's first point; (see
tenth assignment.) The point is as follows: " That the neglect
of the defendant steam company to comply with the regula-
tions prescribed by the town council of the town of Blooms-
burg for the protection of public travel, as set out in the

permit under which the pipes of defendant were laid in the streets of said town, was a culpable omission; and the carelessness of the plaintiff, which would excuse it, would have to be of a very gross character, clearly proven." The answer of the court was as follows: "You see this asks me, not to declare what inference you may draw from the facts, but to charge you this is the law. I cannot do that. An inference from the facts, such as is here suggested, might be drawn by you; but I cannot affirm it as a legal proposition; therefore I refuse it."

This point is obscurely stated; the first sentence is plain enough; it called upon the court to declare the failure of the company to comply with the regulations of the town councils, as set forth in the permit, a culpable omission. The obscurity is in the second sentence. If its meaning was that the plaintiff could recover, unless his own carelessness had been very gross, it was error. The learned judge refused the entire point as a question of law, with a qualification which I think was intended to apply only to the first part of the point. If the said point was intended to convey the impression that the contributory negligence of the plaintiff must be very gross to prevent a recovery, it would have been error in the court to say, "An inference from the facts, such as is here suggested, might be drawn by you." That the court did not mean to give the jury the impression that the contributory negligence, if any, of the plaintiff must have been very gross to prevent a recovery, is apparent from his general charge, in which the law in regard to this subject is thus clearly stated: "If the negligence of the plaintiff has contributed in any degree to the injury received, he cannot recover. This is no arbitrary rule, but is founded upon the highest reason; in another, and perhaps a more intelligible form, it is this: that if the plaintiff, by the exercise of the care required of him under the circumstances, would have avoided the accident, then he cannot blame any one but himself for the result." This is in harmony with the cases. Our latest upon this subject is Monongahela City v. Fischer, 111 Pa. 9, where it was said: "The affirmance of this point involved another error. It imposed a qualification upon the doctrine of contributory negligence that has not heretofore been recognized. It was, that if the negligence of the plaintiff did not contribute in a material degree to the accident, he

Opinion of the Court.

could recover. Without referring to the cases, the doctrine of this court has always been, that if the negligence of the party contributed in any degree to the injury, he cannot recover. This is a safe rule, easily understood, and cannot well be frittered away by the jury. But if we substitute the word 'material' for the word 'any,' we practically abolish the rule, for a jury can always find a way to avoid it. The rule itself is valuable, and rests upon sound principle. We are not disposed to allow it to be undermined."

As before stated, we are unable to see any necessary connection between the fact that the defendant had not complied with the regulations prescribed by the town councils, and the question of the extent of the plaintiff's contributory negligence. The most that can be made of the tenth assignment is that for an obscure point the plaintiff received a somewhat obscure answer, which, if not strictly accurate, could not have damaged the defendant. In view of the correct ruling of the court in the general charge upon this question we cannot give it the meaning imputed to it, and the jury could not have been misled.

We need not refer to the other points in detail. It was not negligence to drive upon the street in question at the time of the accident. The barriers had been taken down some days before, which was an invitation to the public to use the street, or an intimation, at least, that the street was in order for travel. The plaintiff had passed over it earlier on the same day, and found it safe. How was he to know when he entered upon it that evening, the barriers still being down, that this cross ditch had been dug the same evening? Whether it was sufficiently guarded, and the existence and location of the light, were matters for the jury and upon which there was a conflict of evidence. They have found for the plaintiff, and the verdict is large, but the injury was grievous, such as few men in plaintiff's position would be willing to receive for twice the amount. The case was fairly submitted to the jury by the court below, and the judgment must be

Affirmed.