## M. S. WOOD v. BRIDGEPORT BOROUGH.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF MONTGOMERY COUNTY.

Argued February 4, 1891—Decided October 5, 1891.

In trespass against a borough for negligence, whereby the plaintiff's horse was injured by falling into an open trench in a public street, the testimony as to the facts involving negligence on the part of the defendant and contributory negligence on the part of the plaintiff being in conflict, both questions were properly submitted to the jury.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

No. 8 January Term 1891, Sup. Ct.; court below, No. 98 December Term 1889, C. P.

On November 29, 1889, Milton S. Wood brought trespass against the borough of Bridgeport. Issue.

At the trial on March 19, 1890, it was shown that about September 12, 1889, the Frame Building & Loan Ass'n dug a trench across Front street to the canal, in the borough of Bridgeport, for the purpose of draining a wet cellar. The trench was filled up with the earth removed therefrom, and on Sunday, September 15th, a very heavy rain-storm occurred, whereby the trench across the street settled about two feet. The same day, after the rain was over, the burgess and street commissioner made an inspection of the streets, and finding the trench thus settled, had poles put up, upon which in the evening lights were suspended. About eight o'clock in the evening, Lincoln Wood, driving the plaintiff's horse, was returning with a companion from a trip to the country, and drove upon Front street where the trench was. There was testimony on the part of the plaintiff to the effect that one of the poles with the lights on them was on the right side of the street, to the approaching team, and the other about the middle, leaving the left side of the street exposed. The defendant claimed from the testimony adduced that both sides of the street were protected by the poles and lights. The defendant adduced testimony, further,

Charge of Court below.

that Mr. Wood and his companion, as they turned from DeKalb street into Front street, were warned by a man on the corner who called to them that they could not get down there. They testified that they did not hear the warning, but, seeing the lights to the right and in front, drove carefully to the left and went into the trench, whereby the plaintiff's horse was thrown and badly injured.

At the close of the testimony, the court, SWARTZ, P. J., charged the jury in part as follows:

It seems that this trench was dug by the building association across this highway. It was filled up, but by reason of a heavy rain either the trench was washed out or the filling so settled that there was a depression from the surface of the street to the top of the filled-up ditch. If the building association are guilty of erecting a dangerous obstruction in the street, it would be their duty to see that it should be corrected, that the public having occasion to use the street may do so with safety. But, because such may be the duty of the building association, it does not follow that the borough authorities are entirely relieved from removing such an obstruction, or from taking proper steps to protect the public against a dangerous obstacle or obstruction in the street. They would, however, not be liable unless they had notice of the existence of such a dangerous place, put there by other persons, or unless there was such time elapsed from the time it was put there that they ought to have known, and failed to know because they were negligent in not finding out. If they failed to find out by an omission to exercise proper care, they would have been just as guilty as if they had known of the existence of the dangerous place. But that question does not arise in this case, because if you believe the evidence on that point, they did have knowledge of the existence of this trench and of its dangerous condition. . . . . .

You have heard the evidence in this case as to the character of the poles that were put up. According to the plaintiff, as I recollect the testimony, but the testimony is entirely for you and if my recollection is at fault you will correct it,—you will not be guided by my recollection, but rely upon your own recollection of the testimony,—[according to my recollection, the

Charge of Court below.

plaintiff's witnesses testified that these poles were placed, one near the right-hand gutter or curb stone, and the other some distance from it, but that they were on the right-hand side of the street, leaving a place at the left-hand side of the street where it was not covered by the light that was shining from these poles. That is the testimony, so far as I recollect it. On the other hand, the testimony of the defendant is, at least the contention is in that way, that there were two of these poles and that they were properly distributed over the street, one being eight or ten feet from the curb line, and the other was, as the counsel contends, set in the middle of the street, so that the whole street was protected, one part of it as much as the other.][1] As I understand it, one pole was eight or ten feet from the curb, and the next pole some eight or ten feet beyond that, and if the street was only thirty feet wide, the second pole must have been on the left-hand side of the middle of the street. Was this a proper precaution for persons who might drive along that street? Was it a sufficient warning for them that there was danger in crossing this trench? If it was, then the burgess and town authorities are not liable for any damages in this suit.

If the poles were placed as contended by the defendant; if you find that, from the weight of the evidence, I charge you there can be no recovery in this case; because, if the poles were placed, one eight to ten feet from the curbstone and the other from eight to ten feet beyond that in the street, then the street was so covered that the plaintiff, or those having the horse in charge, had a sufficient warning to make inquiry and not drive across without stopping, and if they did so they would be guilty of contributory negligence; that is, if you find the poles covered the street as claimed by the defendant. If, however, the poles and lights were on the right-hand side of the street, then I leave it as a question with you to determine whether there was negligence on the part of the borough in so placing them and not taking other precautions, and whether there was contributory negligence on the part of the parties using this horse in driving over this ditch, notwithstanding these lights were there. As the court views it, this inquiry under the instructions of the court narrows itself down to a very small compass. . . . .

Now, you will take the testimony and determine whether there was any contributory negligence on the part of these young men when they drove down this street. If they heard the notice given to them that they could not pass down the street, and yet persisted in going, that would be negligence on their part, because they failed to heed the warning. However, the parties who drove the team, both Lincoln Wood and the young man who was with him, swear they did not hear any such words used, as I recollect the testimony, by any one standing on the corner of the street. [Suppose they went on and saw these lights there; were they negligent in not stopping, and looking and finding out what was meant by those lights? Here the test is: Did they act in this manner as a reasonable man of ordinary care and prudence would have acted under similar circumstances; that is the test. Did they exercise care and prudence according to the circumstances? If they did, then there was no contributory negligence. If they failed to exercise the care and prudence that a reasonable man under such circumstances would have exercised, then they are guilty of contributory negligence.] [2] That is all that I desire to say to you, gentlemen of the jury, on the question of negligence. . . . . .

I am asked by the defendant to charge you:

1. Under all the evidence in this case the verdict should be for the defendant.

Answer: I refuse to so charge you. It is a matter entirely for you, under the evidence as it has been adduced before you from the stand, and under the law as I have endeavored to give it to you in the charge.[3]

—The jury returned a verdict for the plaintiff for $113.32. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1, 2. The portions of the charge embraced in [ ] [1][2]

3. The refusal of the defendant's point.[3]

*Mr. Henry Freedley*, for the appellant.

Counsel cited: (1) Catawissa R. Co. v. Armstrong, 52 Pa. 286; Spear v. Railroad Co., 119 Pa. 69; Barnes v. Sowden, 119 Pa. 60; King v. Thompson, 87 Pa. 369; Hestonville R. Co. v. Kelley, 102 Pa. 119. (2) Pittsburgh Ry. Co. v. Taylor, 104

Pa. 314; Forks Tp. v. King, 84 Pa. 230; Corbalis v. Newberry Tp., 132 Pa. 15.

*Mr. E. L. Hallman* (with him *Mr. A. R. Place*), for the appellee.

Counsel cited: Bloomsburg Steam Co. v. Gardner, 126 Pa. 80: Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276; Newlin Tp. v. Davis, 77 Pa. 317; Hey v. Philadelphia, 81 Pa. 44; Pittston Bor. v. Hart, 89 Pa. 389; Scott Tp. v. Montgomery, 95 Pa. 444; Humphreys v. Armstrong Co., 56 Pa. 204.

OPINION, MR. JUSTICE STERRETT:

It is quite clear, from an examination of the testimony in this case, that it involved the questions of negligence on the part of the borough authorities, and contributory negligence on the part of the plaintiff. There was also some conflict of testimony, and therefore uncertainty, as to some of the facts bearing on each of these questions respectively. It follows that there was no error in refusing to charge, as requested by defendant, "that under all the evidence, . . . . . the verdict should be for the defendant," or in submitting both the questions above stated to the jury. That was done in a clear, impartial, and comprehensive charge in which we discover no error, especially in those portions thereof recited in the first and second specifications. Neither of the assignments of error is sustained.

Judgment affirmed.