McCoy, Appellant, *v.* Vankirk.

Argued March 24, 1954.    Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Luther C. Braham* and *John L. Wilson,* with them *Galbreath, Braham & Gregg,* for appellants.

*Lee C. McCandless,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 25, 1954:
On April 10, 1950, an automobile owned and operated by B. F. Vankirk came into collision with an

automobile owned and operated by Harold M. McCoy. Vankirk was injured, Mrs. McCoy (travelling in the car with her husband) was injured, and both cars were damaged. B .F. Vankirk brought suit in trespass against Harold McCoy. Harold McCoy and Mrs. Mc-Coy sued Vankirk.

The lawsuits were tried together and the jury returned a verdict in favor of Vankirk in the sum of $1850 and denied the McCoys any recovery at all. For these verdicts to be mutually consistent, the jury had to find that Vankirk was free of contributory negligence in his suit against McCoy and equally free of negligence in the suit against him by the McCoys. So as to remove all doubt on this score, the presiding judge said to the jury at the time of the rendition of the verdict: ". . . you could not have rendered the first verdict in favor of Vankirk if you thought he was guilty of negligence. I want you to be sure about this. If you all think Mr. Vankirk was not guilty of negligence, I want you to stand up; if that is what you mean." Whereupon the jury all rose to their feet.

At the oral argument before this Court on the appeal, counsel for McCoys practically conceded that, in the face of the jury's open confirmation of Vankirk's non-negligence, he had indeed a tight knot to untie if he expected to win the new trial for which he contended. But it does not appear, in spite of his vigorous and painstaking effort in that direction, that he was able to loosen any of the legal cords which have bound up this lawsuit into a final and irrevocable adjudication. The trial was conducted by three able and experienced lawyers (Harold McCoy being represented by one lawyer in his capacity as defendant and by another lawyer in his capacity, together with his wife, as plaintiff) ; the proceedings were presided over by a veteran jurist of distinguished ability;

and the issue, which was a simple one, was decided fairly and rationally by the jury.

The jury found that Vankirk sustained recoverable injuries because McCoy drove his automobile: (1) at 70 miles per hour; (2) on the wrong side of the road; and (3) with such egregious recklessness that it skidded sideways for 106 feet, striking Vankirk's car with an impact that forced it back from a forward motion for some 20 to 25 feet and spinning it the arc of a complete circle, while McCoy's car itself described a violent half turn.

The evidence established McCoy's negligence with mathematical certitude. McCoy's counsel labored long at the oar of a court-pronounced contributory negligence, but he never succeeded in reaching shore with his argument. Nor was it possible for him to do so, since the record demonstrates that the facts could not have permitted the trial court to announce, as a matter of law, that Vankirk was guilty of contributory negligence. The notes of testimony reveal that Vankirk, approaching from a side road into Highway Route No. 8 (on which thoroughfare the accident occurred), stopped 8 feet from the edge of the highway, noted an automobile some 600 or 700 feet away, entered cautiously into Route No. 8 and had travelled two or three car lengths on his own side of the highway when McCoy's car bore down on him *broadside!*

Witnesses testified that McCoy was travelling from 60 to 70 miles per hour. It was a question for the jury as to whether Vankirk, knowing that McCoy was speeding toward the intersection, should have held fast to the westerly side of the through highway until McCoy had passed or whether he could with prudence enter into the highway on the assumption that he had ample time within which to proceed to his lane before McCoy could have reached the intersection. The

jury, presented with this very question, decided that Vankirk was warranted by the physical situation in proceeding, and thus exonerated him from every phase of negligence, necessarily including contributory negligence as well.

The appellant McCoy testified that his car did not exceed a speed of 45 to 50 miles per hour as he approached the intersection. The testimony of a state policeman completely shattered the reliability of McCoy's statement on the question of speed when the officer declared that an automobile proceeding at the speed of 50 miles per hour may be brought to a complete stop within the distance of 111 feet. This would mean that had McCoy been travelling at the speed indicated by him and had he had mastery over the control mechanics of his car, as in law he was required to have, he would almost have been stopped when the cars met. The physical ruin to the front ends of both cars, however, shows that the meeting was not one of vehicles whose momentum has been spent, but a crashing encounter which announced to all those who could see and hear that at least one of the antagonists was in full drive of propulsion.

The McCoy plaintiffs complain that the Court erred in charging the jury: "If a person does drive at a greater rate of speed than fifty miles per hour, that is negligence, as a matter of law." To contest this statement of the law is to drive one's vehicle of argument pell-mell against the massive mountain of the Motor Vehicle Code.[1]

Counsel for the McCoys also aver as error the fact that the Trial Judge discussed, in his charge, the possibility of contributory negligence on the part of Mrs. McCoy. In view of the definitive conclusions reached

---

[1] See *Landis v. Conestoga*, 349 Pa. 97, 100,

by the jury as to the lack of negligence on the part of Vankirk, the Trial Judge's charge on Mrs. McCoy's possible contributory negligence becomes moot. Notwithstanding this, we are satisfied that the Judge's charge was correct in this particular, as in all other particulars.

It was further contended in behalf of the McCoys that they are entitled to a new trial because the Trial Judge failed to instruct the jury on proximate cause. While the judge did not use the actual term "proximate cause" in his charge, he amply covered the circumstance and phenomenon of proximate cause. There is no rule that requires the employment of any set, stereotyped phrases in a charge. In the interests of clarity, it is much preferable that a Trial Judge not use abstract or ponderous law book terms unintelligible to the average lay juror. Nor is it desirable that a judge charge with one eye on the jury and the other metamorphically on the appellate court. A charge wholly devoid of technical exposition but window clear in its succinct recital of the evidence, with instructions on alternate conclusions distillable from the evidence, is more likely to produce a just verdict than one bristling with jurisprudence but empty of graspable reality. The able Judge Keller (later President Judge of the Superior Court) in the case of *Klein v. Weissberg*, 114 Pa. Superior Ct. 569, 575, well expressed the thought when he said: ". . . we doubt the wisdom or advisability of a court's using abstruse legal terms to instruct a jury where their use is not absolutely necessary. 'Proximate cause' means nothing to an ordinary jury, and in most cases an attempt to explain it to them, when not necessary, would only befog the issue."

Reading the record in the light most favorable to Vankirk, as we are required to do in view of the fact that the jury found in his favor, we are satisfied that

it fully supports the verdicts. We also find that the Court's charge covers the case thoroughly and correctly from both an evidential and legal point of view. Judgments affirmed.