Rodgers *v.* Yellow Cab Company, Appellant.

Argued November 21, 1958.   Before Jones, C. J.,
Bell, Musmanno, Cohen and Bok, JJ.

*James J. Leyden,* with him *Josephine H. Klein,* and
*Schnader, Harrison, Segal & Lewis,* for appellant.

*George D. Sheehan,* with him *John Paul Erwin,* for appellants.

*R. Lawrence Clay,* with him *Clay and Newlin,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 12, 1959:

Eva Rodgers and her husband, Raymond H. Rodgers, the appellees, instituted a trespass action against the Yellow Cab Company (herein called Yellow Cab), one of appellants, to recover damages for injuries allegedly sustained by Mrs. Rodgers when a taxicab in which she was a passenger was driven into an excavation at the southeast corner of 33rd Street and Woodland Avenue, Philadelphia. The Yellow Cab Company joined as additional defendants the City of Philadelphia, John F. Meehan & Son, (herein called Meehan), Philadelphia Gas Works, Philadelphia Transportation Company and the Philadelphia Electric Company (herein called Electric Company). Prior to trial and by stipulation of the parties, the Philadelphia Gas Works was dropped as a defendant; during the trial, a verdict was directed in favor of the Philadelphia Transportation Company. The jury returned verdicts in favor of Eva Rodgers in the amount of $15,000, and in favor of Raymond H. Rodgers in the amount of $10,-000 against Yellow Cab Company, John F. Meehan & Son and Philadelphia Electric Company, the present appellants.[1] Motions for judgment n.o.v. and a new trial were filed on behalf of the three present appellants. The motions were denied, and, upon the filing of a *remittitur* for all damages in excess of $7,000 by

---

[1] No verdict was rendered either for or against the City of Philadelphia.

the appellee husband, judgments were entered on the verdicts for both appellees and against Yellow Cab, Meehan and the Electric Company.

The accident occurred on March 8, 1955, at the junction of Chestnut Street, Woodland Avenue and 33rd Street at approximately 1 p.m. on a bright, clear day. Chestnut Street, a one way street eastwardly, runs generally east-west, 33rd Street runs north-south and Woodland Avenue runs northeasterly-southwesterly and diagonally intersects both Chestnut and 33rd Streets. Immediately prior to the accident, the cab, in which Mrs. Rodgers was a passenger, was proceeding in a northeasterly direction on Woodland Avenue, and had stopped southwest of the west curbline of 33rd Street in the extreme right-hand lane on Woodland Avenue, for a traffic light. Directly in front of the cab a large truck had stopped and a trolley car had halted on its left. When the traffic light turned green, the cab driver, intending to turn east on Chestnut Street, followed the truck across the intersection, and, at approximately the east curbline of 33rd Street, the right front, and subsequently, the right rear, wheel of the cab dropped into a hole or excavation. The size and width of the truck apparently permitted its wheels to clear the hole.

The excavation, 6 to 8 inches in depth, had been dug by Meehan under a contract with the Electric Company for the relocation of one of its conduits. The Electric Company had been issued a permit for the excavation by the City of Philadelphia. Three employees of the Electric Company, apparently employed in a supervisory capacity, were at the work site, one of whom had plotted the course over which the ditch for the conduit was to proceed. The excavation ran from a point several blocks south of the intersection of Woodland Avenue and 33rd Street north to the intersection.

Yellow Cab maintains that judgment n.o.v. should have been entered on its behalf because there was no evidence of record to warrant a finding that its cab driver was guilty of negligence. Meehan and the Electric Company contend that judgment n.o.v. should have been entered in their behalf because the record clearly demonstrates, as a matter of law, that the negligence of the cab driver was the sole proximate cause of the accident. Yellow Cab argues in the alternative that a new trial should be granted since the court below erred in charging the jury on negligence and as to certain elements which were to be considered in assessing the damages. Meehan and the Electric Company argue that they are entitled to a new trial because the court below failed to adequately charge the jury on proximate cause and because the verdicts were excessive.

We will initially consider the validity of Yellow Cab's motion for judgment n.o.v. The wife-appellee testified that the cab proceeded across the intersection at a speed of from five to ten miles per hour, approximately two feet behind the truck. She estimated that the excavation into which the wheels of the cab entered was 6 or 7 inches in depth. She did not observe any warning or barricade to indicate that there was an excavation at that point.

John W. Johnson, a cab driver for thirty years, testified that the cab proceeded across the intersection at a speed of from five to eight miles per hour, approximately ten feet behind the truck. He stated that there was nothing at the exact point where the accident occurred to indicate that a hole had been dug, and that, after the accident, he observed the hole, approximately 6 inches in depth and 10 inches in width and running about 2 feet into Woodland Avenue, and it seemed to be an extension of the ditch that ran along the east curbline of 33rd Street.

Upon cross-examination, Johnson testified that while the cab was stopped for the light he noticed construction equipment on an empty lot to his right, that he knew that some type of work was being done along the east side of 33rd Street, that he may have seen men working there but that "it possibly didn't register with me." He further testified that he saw a pile of dirt and some type of barricade running along 33rd Street from approximately ten feet south of the point where the accident occurred "running back I don't know how far." He also stated that as he crossed he did not look to see if there was anything on the ground, yet "If the truck had made any kind of motion to go out of line, I would have noticed it."

James M. Judge, the foreman for Meehan, substantiated the cab driver's testimony that the usual procedure was to run a continuous barricade along with, and in front of, the ditch, and the barricade would run to within approximately ten feet of the corner. He further testified that a crosswalk of timber would then be constructed for pedestrians, and that another barricade would be placed in the ditch from the end of the crosswalk to approximately the point to which the excavation had progressed. However, the witness stated that he had no knowledge as to how far the work had advanced on the date in question, whether or not the barricades that he described were there at the time, and did not know that an accident had taken place until a year later.

In view of the fact that the cab driver Johnson was aware that some type of construction or excavation was in progress along the east curb of 33rd Street, with barricades and dirt extending to within ten feet of the site of the accident, that he testified that he was devoting his attention to the truck ahead of him and was not observing the road, and in view of the conflicting

testimony, varying from two to ten feet, as to the distance between the cab and the truck, we believe that the court properly allowed the jury to determine whether or not Johnson, with his knowledge of conditions in the immediate area, acted unreasonably in following the truck too closely to prevent observation of the highway, and in devoting his attention to the truck that was preceding his vehicle through the intersection, rather than observing the condition of the street. In the cases to which our attention has been directed the question of the negligence or contributory negligence of a motor vehicle operator driving into a ditch or excavation, under circumstances quite apposite to the instant situation, has been invariably left to the jury. See: *Clamper v. Philadelphia*, 279 Pa. 385, 124 A. 132; *Yocum v. Reading City*, 235 Pa. 552, 84 A. 510; *Wood v. Bridgeport Borough*, 143 Pa. 167, 22 A. 752; *Bloomsburg Steam Co. v. Gardner*, 126 Pa. 80, 17 A. 521; *Schwoerer v. Philadelphia*, 167 Pa. Superior Ct. 356, 74 A. 2d 755; *Cimino v. Laub*, 157 Pa. Superior Ct. 371, 43 A. 2d 446; *Boliver v. Philadelphia*, 137 Pa. Superior Ct. 437, 9 A. 2d 193; *O'Connell v. Quaker City Cab Co.*, 84 Pa. Superior Ct. 323.

Nor is the argument of Meehan and the Electric Company that the cab driver's negligence was the sole and superseding cause of the accident any more meritorious. They argue that, even if it be assumed that the act of leaving an unguarded excavation in a heavily travelled street is negligence, the accident was due to the independent act of negligence in the operation of the cab after the driver had become aware of the defect in the highway. Appellants agree that the applicable law is stated in *Kline v. Moyer and Albert*, 325 Pa. 357, 364, 191 A. 43 that: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and there-

after, by an independent act of negligence, brings about an accident, the first tortfeasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause. Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tortfeasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties." See also: *Tolomeo et al. v. Harmony Short Line Motor Transportation Co. et al.*, 349 Pa. 420, 426, 37 A. 2d 511; *Jeloszewski v. Sloan*, 375 Pa. 360, 365, 366, 100 A. 2d 480.

Appellants Meehan and the Electric Company err, however, in assuming that the record clearly discloses that the driver, who would be the "second actor" in the present case, had definite knowledge of the particular defect in the road into which the cab was driven. Although the evidence raises the question whether or not the cab driver, having knowledge of some type of construction or excavation in the immediate area and within ten feet of the site of the accident, used sufficient care in his observation of the condition of the street, that question, as previously stated, was for the jury. There was no evidence whatsoever to indicate that the cab driver had definite knowledge of the perilous condition created at the point of the accident by the "first actor[s]" Meehan and the Electric Company. In fact, since the cab driver's negligence is predicated upon his failure to use due care under the circumstances to observe the defect, it would be impossible to conclude that at that same time he had definite knowledge of this identical condition. A determination by a jury, let alone as a matter of law, that the cab driver's operation of the taxi was the sole and su-

perseding cause of the accident would be completely unjustified. Compare: *Jeloszewski v. Sloan*, 375 Pa. 360, 100 A. 2d 480; *Coleman v. Dahl*, 371 Pa. 639, 92 A. 2d 678; *Kline v. Moyer and Albert*, 325 Pa. 357, 191 A. 43; with *Kite v. Jones*, 389 Pa. 339, 132 A. 2d 683; *Listino v. Union Paving Co.*, 386 Pa. 32, 124 A. 2d 83; *Stone v. Philadelphia*, 302 Pa. 340, 153 A. 550; *Hoffman v. McKeesport*, 303 Pa. 548, 154 A. 925; *DeLuca v. Manchester Laundry and Dry Cleaning Co.*, 380 Pa. 484, 112 A. 2d 372. If Johnson, the cab driver, upon seeing the excavation and being aware of it, could have avoided the accident, but instead was thereafter guilty of negligence in the operation of the taxicab so as to cause his vehicle to enter the excavation, his negligence would have been the actual and efficient cause of the accident. But if Johnson, through inattention to the condition of the highway or for any other reason, was negligent in failing to see the excavation until such time that the collision, even if Johnson had been careful thereafter, could not have been averted, such negligence on his part would not relieve Meehan and the Electric Company from liability for their original act of negligence—leaving an unguarded excavation in the highway—which would remain as an equally contributing cause of the accident. Under the present evidence the latter was the situation.

Meehan and the Electric Company urge that the trial judge erred in failing to instruct the jury on proximate cause. An examination of the charge indicates that the court did *not* charge *specifically* on proximate cause. Meehan presented the following point for charge: "5. If you find that the Yellow Cab operator saw piles of dirt and wooden barricades at or near the northeast corner of 33rd Street and Woodland Avenue when he was stopped for the red light at the southeast corner before crossing 33rd Street, and if you find that

he thereafter drove into a hole or excavation at or near the northeast corner, then you may find that the Yellow Cab Company was negligent and that its negligence was the sole proximate cause of the accident."

The court said the point would be affirmed if the following language was deleted: *"and that its negligence was the sole proximate cause of the accident".* Counsel then stated: "I wanted you to charge as to the (ap)proximate cause. In other words, the (ap)proximate cause as it would be applied in this case in the event the taxicab driver saw barricades before he proceeded across the street." Counsel then eliminated the objectionable language of the point; the court then affirmed and read this point to the jury. Meehan's next point was: "6. If you find that the Yellow Cab operator saw the dirt piled a couple of feet high along the east curbline of 33rd Street, south of Woodland Avenue, and that he saw barricades along the same curbline at or near the corner of Woodland Avenue, before he crossed 33rd Street, and if you find that he thereafter drove into a hole or excavation at or near the northeast corner of 33rd Street and Woodland Avenue, then you may find that Defendants Meehan were not negligent." The court stated that it would affirm this point if there were deleted therefrom the following language: *"then you may find that the Defendants Meehan were not negligent."* Counsel then stated: "I think it deals with the (ap)proximate cause. Your Honor has not charged on (ap)proximate cause." Counsel refused to eliminate the objectionable portion of the point and the court refused the point. The Electric Company requested the Court to charge: "3. If you find that an excavation was dug under a permit issued to the Philadelphia Electric Co. and if you find that barricades were posted along said excavation so that the operator of the Yellow Cab saw them prior to crossing 33rd St., then you

may find the Yellow Cab Company was negligent and that its negligence was the proximate cause of the accident and you may then find for plaintiffs against the Yellow Cab Company alone." The court refused this point unless the following language was deleted therefrom: *"that its negligence was the proximate cause of the accident and you may then find for plaintiffs against the Yellow Cab Company alone."* Counsel having refused to eliminate this portion of the point, the point was refused.

Even though a trial court in its instructions to a jury does not use the term "proximate cause", such instructions are sufficient if they amply cover "the circumstances or phenomenon of proximate cause"; *Mc-Coy v. Vankirk,* 377 Pa. 515, 519, 105 A. 2d 112. In *Klein et ux. v. Weissberg,* 114 Pa. Superior Ct. 569, 575, 174 A. 636, the late President Judge KELLER stated: "Furthermore we doubt the wisdom or advisability of a court's using abstruse legal terms to instruct a jury where their use is not absolutely necessary. 'Proximate cause' means nothing to an ordinary jury, and in most cases an attempt to explain it to them, when not necessary, would only befog the issue. If plaintiff's evidence in this trial was true, defendant's negligence was the proximate cause of the accident and the jury should find a verdict accordingly; but the jury need only be told, in such circumstances, that if they found from all the evidence that the defendant did what the plaintiffs swore he did, then they could find that he was negligent, and if they so found, the verdict should be for the plaintiffs."

An analysis of the points for charge submitted by Meehan and the Electric Company reveals their objective to have been not only a charge on the subject of proximate cause but on the subject of superseding cause. However, neither proximate cause nor super-

seding cause was at issue in this lawsuit. Meehan, the Electric Company and Yellow Cab, if liable at all, were liable upon a theory of concurrent negligence; without the coincidence of the excavation and the operation of the taxicab the accident would not and could not have happened. Neither the excavation alone nor the operation of the taxicab alone would have brought about this accident. It was the combination of both which gave rise to the happening of this accident. In *O'Malley v. P. R. T. Co.*, 248 Pa. 292, 295, 93 A. 1014, this Court said: "What injured [plaintiff] was the collision, which was the direct result of the combined negligence of the two defendants, and, for the immediate consequences of what they jointly brought about, they are, and ought to be, jointly accountable, even though the plaintiff might have sued them separately, joint wrong-doers being liable both jointly and severally": the court held that since the question at issue was one of concurrent negligence proximate cause need not have been considered. See also: *Hughes et ux. v. Pittsburgh Transportation Co. et al.*, 300 Pa. 55, 150 A. 153; *Holstein et al. v. Kroger Grocery & Baking Co.*, 348 Pa. 183, 185, 186, 34 A. 2d 491.

Proximate cause under the instant circumstances was not an issue; a charge on that subject was not only unnecessary but irrelevant. The question of superseding cause was also not pertinent in the absence of some proof that the cab driver was aware of the presence of the excavation in the street. Whether or not the cab driver was aware of the excavation in the street was not even a question for determination by the jury, let alone for assumption as an established fact. Even though it be assumed *arguendo* that proximate cause was relevant, and, conceding the absence of that particular phrase in the court's charge, an examination of the court's charge in its entirety indicates that the jury

were instructed that no verdict. of negligence against any or all of the defendants could be rendered unless it were found that an act or omission to act on the part of them, or any of them, had caused and brought about this accident. The charge satisfied generally the requirement that negligence to be actionable shall have been the proximate cause of the accident particularly under the facts and circumstances of the instant case.

Yellow Cab also objected to the court's charge generally in that it did not "attempt to analyze the evidence in the light of the applicable legal rules of negligence." Counsel raised no such objection in the court below, and after a review of the thirty-six page charge, we are satisfied that the trial judge adequately presented to the jury the pertinent factual and legal issues.

Yellow Cab also argues that the court below committed prejudicial error in affirming a point for charge made by Meehan because it contained a factual misstatement which confused the jury. The point read: "If you find that the Yellow Cab operator saw the piles of dirt and wooden barricades at or near the *northeast* corner of 33rd Street and Woodland Avenue when he was stopped for the red light at the *southeast* corner before crossing 33rd Street, and if you find that he thereafter drove into a hole or excavation at or near the *northeast* corner, then you may find that the Yellow Cab Company was negligent." (Emphasis supplied) As a matter of fact, the dirt and wooden barricade and the excavation into which the cab was driven were at the *southeast* corner, while the cab was stopped for the traffic light at the *southwest* corner. Yellow Cab urges that because the court mistakenly referred to the *northeast,* rather than the *southeast* corner, the jury was left with the impression that the operator could be held negligent ". . . if he was aware that there was or might

be some construction under way somewhere in an undefined 'area', even if the physical evidence of the construction was outside the driver's possible range of vision." Aside from the fact that the court repeatedly and distinctly advised the jury that it alone was to determine the facts, and that counsel for Yellow Cab raised no objection to the reading of the point at trial, appellant's argument as a practical matter is untenable. We cannot reasonably believe that the jury would completely disregard the testimony of three witnesses, a diagram of the area and a thirty-six page charge of the trial judge, all establishing the position of the barricade and the hole or excavation into which the cab was driven as being on or near the *southeast* corner, and from a single statement in a point for charge, which apparently passed unnoticed by all counsel, conclude either that the barricade or the situs of the accident were located at the northeast corner when it had not been previously mentioned in any of the testimony.

Finally, appellants urge that they are entitled to a new trial because (1) the trial court erred in failing to instruct the jury, as requested, that it could not award damages for physical ailments occasioned by Mrs. Rodgers' pre-existing osteoarthritic condition, (2) the trial court erred in admitting evidence of the gross receipts of appellees' business and in instructing the jury that, in the assessment of damages, they could consider any diminution or decline in the gross receipts and (3) the verdicts were excessive.

Dr. Arthur H. Thomas, called into consultation by Mrs. Rodgers' physician, first examined Mrs. Rodgers on November 14, 1957—two years, seven months subsequent to the accident—and ordered X-ray studies. He testified that Mrs. Rodgers' symptoms, with the exception of bursitis in the right shoulder, arose from an aggravation by the accident of a pre-existing osteo-

arthritic condition, which, in his opinion, would increase in severity as the arthritis progressed. Appellees having made no claim in their pleadings for an aggravation of a pre-existing osteoarthritic condition, the court properly prevented counsel from attempting to elicit of Dr. Thomas testimony along this line: *Littman v. Bell Telephone Company of Pennsylvania,* 315 Pa. 370, 380, 381, 172 A. 687.[2] However, an examination of the trial court's charge leads us into full agreement with Yellow Cab's statement in its brief: "But the trial judge failed to instruct the jury that they could not award damages for any pain, suffering and disability due to the arthritic condition. On the contrary, the instruction . . ., in effect, told them they could award compensation for Mrs. Rodgers' pain, suffering, and disability, past, present and future even if due to arthritis." The justification set forth in the court's opinion that "There went to the jury absolutely no evidence of any aggravation of a pre-existing condition" is a negative approach to the problem. What the trial judge should have done and completely failed to do was to instruct the jury in a positive manner that if Mrs. Rodgers' injuries, with the exception of the pain in the right shoulder, were due to an arthritic condition, no recovery could be allowed for such injuries. In this respect the trial court committed harmful and reversible error.

A more serious error on the part of the trial court arose from the admission into evidence of the gross receipts of appellees' business from 1953 to 1957, inclusive, which receipts showed a steady decline. The gross receipts of a plaintiff's business are no index to either net earnings or earning power: *Pilipovich v.*

---

[2] Cf. *Reppert v. White Star Lines, Inc. et al.,* 323 Pa. 346, 350. 186 A. 788.

*Pittsburgh Coal Co.*, 314 Pa. 585, 172 A. 136; *Longden v. Conestoga Transportation Co.*, 313 Pa. 561, 169 A. 884; *Baxter v. Philadelphia & Reading Railway Co.*, 264 Pa. 467, 107 A. 881; *Dempsey v. City of Scranton*, 264 Pa. 495, 107 A. 877. The *Longden* case, supra, relied upon by the court below, casts no doubt on the inadmissibility of such evidence. Not only did the trial court admit such evidence but in its instructions to the jury *three* times in *one* paragraph of the charge the jury were told that they could take the decline in the gross receipts of appellees' business into consideration. No attentive jury could have failed, acting upon the court's instructions, to give consideration to the decline in gross receipts of the appellees' business in arriving at a loss of Mrs. Rodgers' earnings or earning power. The justification given by the court below both for the admission of such evidence and the instruction thereon,— i.e. the failure to object by Yellow Cab's counsel—is without basis on the record. The record shows the following episode during the direct examination of Mrs. Rodgers: "Q. Do you attach any reason for the apparent decrease in the amount of gross receipts over those years? MR. LEYDEN: That is objected to. THE COURT: Objection overruled. THE WITNESS: Well, I wasn't there to help, and, naturally, the business deteriorated because of the lack of my presence." After the court's charge the following episode took place: "MR. VELDORALE [Counsel for City of Philadelphia]: . . . I don't think that partnership figures could be used as a basis for the loss of earnings. The partnership is not a litigant in this case. Therefore, the figures should not be taken as a standard of loss to the business. They, the partnership figures, show a steady decline, and this happened in March, 1955. I don't see the relevancy of saying that was responsible for the decline of the business.

428

"THE COURT: Well, didn't it become incumbent upon you during the trial of this case to object to it?

"I repeat to the jury now that the loss of earning power is not as clearly etched as I would like it to be, and Mr. Veldorale is perfectly right. You cannot consider the years 1953 and 1954, which were years before this accident happened. Those figures were introduced as evidence, as I recall, without objection by anyone, and they are extraneous figures in this case. You are quite correct about that. But, insofar as I have not covered it by the modification of my charge, I grant you an exception to anything you think is objectionable." Mr. Leyden, Yellow Cab's counsel, joined in this objection. An examination of the charge indicates that the court clearly left the jury under the impression that it could consider any decline in the gross earnings of the business after Mrs. Rodgers' injury in determining her loss of earnings or earning power. The trial court in this respect committed such error as requires a reversal of the judgments and the grant of a new trial.

In view of our conclusion that a new trial must be granted it is unnecessary for us to pass upon the question of the propriety of the amount of the verdicts.

Judgments reversed and new trial granted.

Mr. Justice COHEN would enter judgment n.o.v. in favor of Yellow Cab Company.