510 A.2d 776

**Ruth J. PACHESKY and Robert Pachesky, her husband, Appellants,**

v.

**Frank D. GETZ, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 24, 1986.

Filed May 29, 1986.

James Cole, Pittsburgh, for appellants.

John E. Wall, Pittsburgh, for appellee.

Before CIRILLO, President Judge and CAVANAUGH, BROSKY, WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, MONTEMURO and TAMILIA, JJ.

MONTEMURO, Judge:

On December 6, 1978, appellant, Ruth J. Pachesky, was injured during an attempt to rescue appellee, Frank D. Getz. Ms. Pachesky and her husband, Robert Pachesky [hereinafter appellants], thereafter commenced an action against appellee in the Court of Common Pleas of Allegheny County.

On September 25, 28 and 30, 1981, this case was tried before the Honorable I. Martin Wekselman and a jury. Responding to special interrogatories propounded by the court below, the jury found that: (1) both Ms. Pachesky and appellee were negligent; (2) their respective negligent acts or omissions were substantial factors in bringing about Ms.

Pachesky's injuries; and (3) of the total causal negligence, 20% was attributable to appellee and 80% was attributable to Ms. Pachesky. In light of these findings, the court below entered a verdict in favor of appellee. *See* 42 Pa. C.S. § 7102.

On October 9, 1981, appellants filed a motion for new trial, which was briefed and argued by the parties, and subsequently denied by the court below in an order dated July 13, 1983. Judgment was entered on the verdict and this timely appeal followed.

As ably set forth in the opinion of the court below, the unfortunate circumstances giving rise to this action are the following:

In the early morning hours of December 6, 1978, plaintiff [appellant] Ruth Pachesky was returning from work. Her home was at the crest of a hill on Tingley Avenue in the Borough of Bellvue. As she approached her home, she observed a stationary car in the middle of the street just below the crest of the hill. She passed the stationary vehicle and noticed that its lights were on, the engine was running, the windows were up, and that a man, who proved to be defendant [appellee] Frank D. Getz, was slumped motionless over the steering wheel. Believing the defendant was being overcome by carbon monoxide, she parked her car, ran into her house and got her husband, plaintiff [appellant] Robert Pachesky. The two of them returned to the scene, pounded on the windshield and shouted in an attempt to arouse defendant. When defendant failed to respond, they tried to open the passenger side door and found that it was locked. Mrs. Pachesky then ran around to the driver's side, opened the door, rolled down the window and turned off the ignition. As soon as the ignition was turned off, the car began to drift backwards down the hill. The open door of defendant's car struck Mrs. Pachesky, knocking her to the ground and inflicting certain personal injuries on her. Evidence at trial indicated that defendant was intoxicated and that

possibility was really not seriously contested by defendant.

Lower court opinion, 1–2.

The issues presented by appellants for our review are: (1) whether the verdict was against the weight of the evidence; (2) whether the court below erred with respect to its jury instruction on "proximate causation"; and (3) whether the court below "erred in refusing to instruct the jury that when a plaintiff is injured while attempting to rescue a defendant who negligently placed himself in a position of peril the plaintiff cannot be found contributorily negligent unless the plaintiff's actions were rash or wanton." Appellants' brief, 3.

## I. Weight of the Evidence.

Appellants' first issue need not detain us. In *Sperrazza v. Cambridge Mutual Fire Insurance Company*, 313 Pa. Super. 60, 459 A.2d 409 (1983), we reiterated standards of review equally pertinent to the case *sub judice:*

> When considering a motion for a new trial on the grounds that the verdict was against the weight of the evidence, the evidence is not considered in the light most favorable to the verdict winner. Rather, all evidence must be reviewed to determine whether the verdict is so contrary to the evidence as to shock one's sense of justice, making the award of a new trial imperative so that right may be given another opportunity to prevail. *Cianci v. Burwell*, 299 Pa.Super. 387, 390, 445 A.2d 809, 810 (1982); *Peair v. Home Association of Enola Legion No. 751, supra* 287 Pa.Super. [400] at 410, 430 A.2d [665] at 670 [1981]. The grant of a new trial is within the sound discretion of the trial judge whose exercise thereof will not be reversed in the absence of a palpable abuse of discretion. *Yandrich v. Radic*, 291 Pa.Super. 75, 79, 435 A.2d 226, 229 (1981); *Canery v. Southeastern Pennsylvania Transportation Authority*, 267 Pa.Super. 382, 391, 406 A.2d 1093, 1097 (1979); *Ditz v. Marshall*, 259 Pa.Super. 31, 35, 393 A.2d 701, 703 (1978).

*Id.* 313 Pa.Super. at 64–65 n. 3, 459 A.2d at 411 n. 3. *See Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985). Furthermore, we are mindful in this regard that,

> An abuse of discretion does not necessarily imply a willful abuse, but if,
>
> > [I]n reaching a conclusion, the law is overridden or misapplied or *the judgment exercised is manifestly unreasonable as shown by the evidence or the record,* discretion is then abused and it is the duty of the appellate court to correct the error.
>
> *Commonwealth v. One 1961 Buick Special 4–Door Sedan,* 204 Pa.Super. 293, 295, 204 A.2d 288, 289 (1964). (Emphasis added.) *Adelman v. John McShain, Inc.,* 148 Pa.Super. 138, 24 A.2d 703 (1942).

*Prescott v. Prescott,* 284 Pa.Super. 430, 435, 426 A.2d 123, 125 (1981).

■ Appellants' specific contention is that the jury's attribution to Ms. Pachesky of a greater percentage of the causal negligence was contrary to the weight of the evidence. The court below rejoined this contention with the following:

> Mrs. Pachesky's own testimony was to the effect that she turned off the ignition without checking to determine if the parking brake was engaged or if defendant had his foot on the foot brake; nor did she determine whether the vehicle's transmission was in 'park,' 'neutral' or 'drive.' She, of course, was an experienced driver and knew or should have known that the vehicle would roll back down the hill, unless the brake was set or the transmission was in 'park,' after the ignition was turned off. The jury had evidence before it from which it could determine that a reasonably prudent person, under like circumstances, would have taken the precaution of determining those matters before placing herself in such a dangerous position. Nor can a new trial be awarded on the basis that the verdict was against the weight of the evidence merely because the trial judge would have reached a different

conclusion on the evidence presented. The trial judge is not free to usurp the function of the jury in those situations where there is evidence from which the jury could have found as it did.

Lower court opinion, 3. While *appellee's* causal negligence, as demonstrated by the record, was patently *not* insignificant, our sense of justice is nevertheless unoffended by the jury's apportionment. Not only are we unable to find any "palpable abuse of discretion" on the part of the court below with respect to this issue, we are of the opinion that the court's evidential analysis and subsequent disposition were quite proper.

II. Causation.

■ Prefacing its charge as to "proximate causation", the court below instructed the jury that, "Proximate means immediate, nearest, next in order, and in its legal sense, closest in causal connection." N.T., 85. Appellants assign this instruction as reversible error. Specifically, appellants argue that, on the basis of this instruction, the jury may have mistakenly concluded that appellee's negligence was not actionable in that Ms. Pachesky's acts were temporally supervenient; *i.e.*, appellee's acts could not be viewed as "nearest" or "closest" and therefore "proximate". Not only is appellants' contention belied by the jury's ultimate attribution of 20% of the causative negligence to appellee, considering the totality of the charge on "proximate causation", any error with regard to the portion complained of clearly does not warrant reversal.

In *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 475 A.2d 1314 (1984), our supreme court observed:

It is well settled in our Commonwealth that when the propriety of the jury instruction of the trial court is at issue, those instructions must be viewed *in toto* to determine if any error has been committed. Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies. *McCay v. Philadelphia Electric Co.*, 447 Pa. 490, 291

A.2d 759 (1972). *Vanic v. Ragni*, 435 Pa. 26, 254 A.2d 618 (1969).

*Id.*, 504 Pa. at 576, 475 A.2d at 1316. *See also Naccarati v. Garrett*, 351 Pa.Super. 437, 506 A.2d 428 (1986). Immediately following its definitional instruction with respect to the word "proximate", the court below offered a full explication of the legal theory of "proximate causation", charging:

> So proximate cause means that, which in a normal and continuous sequence, unbroken by any efficient intervening cause, produces the incident and without which the result would not have occurred. To constitute proximate cause, an act or omission must be such as would probably result in harm, and it must be a substantial factor in bringing about that harm.

N.T., 85. Additionally, responding to a request by the jurors for a legal definition of the word "substantial", the court below subsequently supplemented its charge, stating:

> I will attempt to give you a legal definition of the word, substantial, in addition to what I have already given you. A substantial factor is an actual, real factor, although the result may be unusual or unexpected, but it is not an imaginary or fanciful factor or a factor having no connection or only an insignificant connection with the accident. Now, that is the best I can do for you as a legal definition of the word, substantial, as it is applicable to the issues of negligence and contributory negligence in this case.

*Id.* at 114-15. We are of the opinion that the court's instructions as they specifically related to the overall concept of proximate, or "legal", causation were in complete consonance with the current state of the pertinent law of this Commonwealth.

In *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978), our supreme court offered the following elucidation:

> Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant. *Flickinger Estate v. Ritsky*, [452 Pa. 69, 305 A.2d 40 (1973)]; W.

Prosser, Law of Torts, § 41 (4th ed. 1971); and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm. *Flickinger Estate v. Ritsky, supra; Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970) (plurality opinion); *Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A.2d 873 (1965); *Diakolios v. Sears Roebuck & Co.,* 387 Pa. 184, 127 A.2d 603 (1956); *Simon v. Hudson Coal Co.,* 350 Pa. 82, 38 A.2d 259 (1944); *Frangis v. Duquesne Light Co.,* 232 Pa. Super. 420, 335 A.2d 796 (1975). The defendant's negligent conduct may not, however, be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence. *Majors v. Brodhead Hotel, supra; DeAngelis v. Burns,* 404 Pa. 230, 171 A.2d 762 (1961); *Frangis v. Duquesne Light Co., supra;* Restatement, § 432.

*Id.* 481 Pa. at 265, 392 A.2d at 1284. *See also E.J. Stewart, Inc. v. Aitken Products, Inc.,* 607 F.Supp. 883, 889 (E.D. Pa.1985); *Baum v. United States,* 541 F.Supp. 1349 (M.D. Pa.1982); *McKnight v. City of Philadelphia,* 299 Pa.Super. 327, 445 A.2d 778 (1982); Pa. SSJI (Civ) 3.25. A finding of proximate causation must implicitly embody both a finding of "causation-in-fact" and a finding that the alleged negligence was a "substantial factor" in bringing about the injury. The jury in the instant case was thoroughly and accurately apprised of those requisites. While the prefatory instruction with regard to the word "proximate" may have been inartful and unnecessarily limiting,[1] given its relation herein to the applicable doctrine of causation, viewing the relevant instructions *in toto,* we are unable to discern any appreciable prejudice that may have operated to

---

1. It is evident from our research that the definition of "proximate" employed by the court below was found in Black's Law Dictionary 1103 (5th ed. 1979), which similarly defines the word as meaning, "Immediate; nearest; direct, next in order. In its legal sense, closest in causal connection."

appellants' detriment. Therefore, we expressly decline to find reversible error.[2]

## III. Rescue Doctrine.

Having resolved the preceding two issues against appellants, we now confront perhaps the most challenging of the three issues to be considered.

As we said, appellants allege that the court below "erred in refusing to instruct the jury that when a plaintiff is injured while attempting to rescue a defendant who negligently placed himself in a position of peril the plaintiff cannot be found contributorily negligent unless the plaintiff's actions were rash or wanton." Appellants' brief, 3. Conversely, appellants challenge the instruction actually given as a "misleading and erroneous" statement of the relevant legal principle. The court below instructed, in pertinent part:

> Now, members of the jury, there is a theory of law which you must consider in your deliberations, and that is where a person places another person or himself, where he negligently places another person or himself in a position which in the natural and normal course of events invites rescue, he is liable to the person who comes to his rescue for any injury which that person may suffer in the attempted rescue, provided, of course, that the person who attempts the rescue acts reasonably in attempting to effect that rescue.

**2.** As is nonetheless clearly exemplified by this case, the word "proximate", in both its definitional and connotative senses, may, at the very least, muddle a formulation for actionable causation. Therefore, we are of the opinion that in charging a jury with respect to causation in negligence cases, trial courts should refrain from utilizing the word "proximate". It is wholly unnecessary to an accurate statement of the pertinent doctrine. Our position accords with that adopted by the Civil Instructions Subcommittee, which noted with regard to its proposed instruction for "*Legal* Cause", Pa. SSJI (Civ) 3.25:

> [M]ost of the usual legal phrases have been jettisoned from the charge on legal cause. The term 'legal cause' is retained to inform the jury that the plaintiff must also prove causation, and that not all causes are the 'legal cause.' But 'proximate cause,' a term that attempts to give substance to the distinction between factual cause and legal cause, but which 'means nothing to an ordinary jury,' *Rodgers v. Yellow Cab Co.*, 395 Pa. 412, 422, 147 A.2d 611 (1959), has been deleted.

N.T., 87. Therefore, we are directed by this appeal to consider the current posture of the so-called "rescue doctrine" (otherwise known as the "danger-invites-rescue doctrine") in this Commonwealth.

In 1921, Justice Benjamin Cardozo declared with his customary verve:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid.... The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path.... The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had.

*Wagner v. International R. Co.*, 232 N.Y. 176, 180, 133 N.E. 437, 437–38 (1921).[3]

Speaking through Justice J. Hay Brown, our own supreme court had previously posited:

> A rescuer, one who, from the most unselfish motives, prompted by the noblest impulses that can impel man to deeds of heroism, faces deadly peril, ought not to hear from the law words of condemnation of his bravery, because he rushed into danger, to snatch from it the life of a fellow creature, imperiled by the negligence of another; but he should rather listen to words of approval,

---

3. More than thirty years later, our supreme court's own Justice Michael A. Musmanno, in setting forth Justice Cardozo's above pronouncement, referred to him appropriately as "juristically immortal." *Cooper v. Reading R. Co.*, 370 Pa. 192, 201, 87 A.2d 916, 918 (1952) (Musmanno J., dissenting).

unless regretfully withheld on account of the unmistakable evidence of his rashness and imprudence. This conscience and reason approve, and the best judgment of thoughtful and intelligent judges has declared it to be the law of the land.

*Corbin v. City of Philadelphia,* 195 Pa. 461, 468–69, 45 A. 1070, 1072 (1900). One of the more complete, and certainly more recent, statements of this doctrine is contained in the opinion of the Georgia Court of Appeals in *Walker Hauling Company v. Johnson,* 110 Ga. App. 620, 139 S.E.2d 496 (1964):

> Where a defendant's negligent act, of commission or omission, has created a condition or situation which involves urgent and imminent peril and danger, to life or property, of himself or of others, those acts of negligence are also negligence in relationship to all others who, in the exercise of ordinary care for their own safety under the circumstances, short of rashness and recklessness, may attempt, successfully or otherwise, to rescue such endangered life or property, by any means reasonably appropriate to the purpose; and insofar as the proximate cause of any injuries that a rescuer sustains as a result of his efforts is concerned, the chain of causation remains intact, since it is reasonably to be anticipated that, once such peril to life or property is initiated and brought into being by the negligence of a defendant, reasonable attempts will be undertaken to alleviate and nullify the consequences of such peril.

*Id.* at 624, 139 S.E.2d at 499. *See also Furka v. Great Lakes Dredge & Dock Co., Inc.,* 755 F.2d 1085 (4th Cir.), cert. denied, —— U.S. ——, 106 S. Ct. 136, 88 L.Ed.2d 112 (1985); *Altamuro v. Milner Hotel, Inc.,* 540 F.Supp. 870 (E.D. Pa. 1982); *Ryder Truck Rental, Inc. v. Korte,* 357 So.2d 228 (Fla.Dist.Ct.App.1978); *Padilla v. Hooks International, Inc.,* 99 N.M. 121, 654 P.2d 574 (Ct.App.), cert. denied, 99 N.M. 148, 655 P.2d 160 (1982); *Cords v. Anderson,* 80 Wis.2d 525, 259 N.W.2d 672 (Wis.1977).

Against this rather colorful doctrinal backdrop, appellants would appear to be correct in urging that a rescuer's contributory negligence is legally manifested only by his/her rashness or wantonness. However, it must be kept in mind that the rescue doctrine has traditionally existed only in so far as to serve the dual purposes of (1) establishing a causal connection between a defendant's negligence and a plaintiff/rescuer's injury, and (2) eliminating the absolute defense of contributory negligence. *See Korte, supra,* 357 So.2d at 230. "The purpose of the rescue doctrine when it was first created was to avoid a plaintiff being found contributorily negligent as a matter of law when he voluntarily placed himself in a perilous position to prevent another person from suffering serious injury or death." 57 Am.Jur.2d *Negligence* § 419 (1971). In short, the rescue doctrine has permitted rescuing plaintiffs access to the courthouse despite the volitional nature of their rescue efforts and further permitted recovery, once therein, from negligent defendants despite the unreasonableness of the plaintiffs' acts as long as that unreasonableness did not amount to wantonness. The law, in these circumstances, has clearly harbored a high regard for human life and its preservation. *See Scott v. John H. Hampshire, Inc.,* 246 Md. 171, 227 A.2d 751 (1967).

In 1976, this Commonwealth, long a jurisdiction wherein the contributory negligence of a plaintiff, no matter how insignificant, barred recovery in a negligence action,[4] adopted a system of comparative fault apportionment. Our current comparative negligence statute provides in pertinent part:

(a) General rule—*In all actions* brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negli-

4. *See McCay v. Philadelphia Electric Co.,* 447 Pa. 490, 291 A.2d 759 (1972).

gence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa. C.S. § 7102 (emphasis supplied). The existence of two negligent acts or omissions, on the part of a plaintiff and a defendant respectively, triggers the invocation of section 7102's provisions. *See Carrender v. Fitterer.* 503 Pa. 178, 469 A.2d 120 (1983). The absolute defense of a plaintiff's contributory negligence has been abolished.[5] Accordingly, in that the "wantonness" standard exhorted by appellants developed as an amelioration of the harshness of the contributory negligence rule in rescue cases, the advent of our system of comparative fault necessitates the reevaluation of the continued usefulness of that standard.

For guidance, we turn first to our sister state, Wisconsin. Wisconsin's "contributory negligence" statute, Wis.Stat. Ann. § 895.045 (1983), is, in all relevant respects, identical to our "comparative negligence" statute.[6] In *Cords, supra.*, the Wisconsin Supreme Court considered the applicability of the rescue doctrine in an action involving comparative fault. The court concluded:

> We hold that a rescuer is not negligent where the rescue, although dangerous, is not unreasonable or unreasonably carried out. In a comparative negligence jurisdiction such as Wisconsin, if the trier of fact finds that the rescue is unreasonable or unreasonably carried out the factfinder should then make a comparison of negligence between the rescuer and the one whose negligence created the situation to which the rescue was a response.

*Cords*, 80 Wis.2d at 548, 259 N.W.2d at 683.

**5.** *See generally,* J. Palmer & S. Flanagan, Comparative Negligence Manual (rev. ed. 1971); V. Schwartz, Comparative Negligence (2d ed. 1986); Symposium, *Comparative Negligence in Pennsylvania,* 24 Vill.L. Rev. 419 (1979); Note, *Comparative Negligence,* 81 Colum.L.Rev. 1668 (1981).

**6.** *See Thompson v. City of Philadelphia,* 320 Pa.Super. 124, 134 n. 3, 466 A.2d 1349, 1354 n. 3 (1983), *rev'd,* 507 Pa. 592, 493 A.2d 669 (1985).

In *Korte, supra,* the Florida District Court of Appeal[7] similarly found:

Now that Florida has abolished contributory negligence, the rescue doctrine is no longer needed to allow a rescuer to recover in spite of his contributory negligence, but there is no logical reason why the principles of comparative negligence should not apply in a rescue case. We therefore hold that when the plaintiff in performing a rescue is himself negligent, he should recover only that portion of the entire damages sustained by him as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant.

*Korte,* 357 So.2d at 230.

■ We are persuaded as to the wisdom of these holdings. When a plaintiff performs a rescue in a reasonable manner, he/she is entitled to full recovery from the negligent defendant for all damages occasioned thereby. However, when a plaintiff acts unreasonably, that is, in a negligent fashion, in performing a rescue, the relative causal negligence of the parties should be apportioned in accordance with the provisions of section 7102.

We hasten to add that the rescue doctrine is clearly not subsumed by our system of comparative negligence. Of the previously articulated dual purposes which the doctrine served, the doctrine continues to serve the vital, albeit singular, purpose of establishing a causal connection between a defendant's negligence and a plaintiff/rescuer's injury, which in turn leaves open the courthouse door.[8]

7. Florida is a "pure comparative negligence" jurisdiction. *See Hoffman v. Jones,* 280 So.2d 431 (Fla.1973).

8. Inexplicably, Judge Cavanaugh, in his dissent, characterizes the rule announced today as "stripping" the rescue doctrine of the underlying principle that an imperiled person's negligence should be actionable in rescue cases. Such a characterization fundamentally misapprehends the purpose and effect of our analysis herein. We have carefully left unaltered the fictive, yet necessary, link of causation which the rescue doctrine provides between an imperiled person's negligence and a rescuing plaintiff's volitional act. To do otherwise would quite clearly eradicate rescuers' favored status in the eyes of the law.

■ Returning to the instruction at issue, we find that the court below was eminently correct in directing the jury to allow for Ms. Pachesky's full recovery if the jury found her, as the rescuer, to have acted "reasonably". The jury, as factfinder, found otherwise and, in accordance with the further instructions of the court below, the jury appropriately assigned to Ms. Pachesky a percentage of the causative negligence.[9]

In light of the foregoing, we affirm the judgment entered below.

Judgment affirmed.

CIRILLO, President Judge, BROSKY, WIEAND, DEL SOLE and TAMILIA, JJ., join in opinion for affirmance.

OLSZEWSKI, J., files concurring opinion.

McEWEN, J. joins in concurring opinion.

CAVANAUGH, J. files dissenting opinion.

Indeed, by proposing to adhere to the traditional element of the doctrine which defines a rescuer's contributory negligence only in terms of rashness or wantonness, the dissent itself disregards the doctrine's underpinnings and the recent evolution of our notions with respect to contributory negligence. By legislative enactment, contributory negligence is now a creature with a comparative sensibility. In so far as the rescue doctrine developed to soften the strict tenets of the contributory negligence rule in rescue cases, the doctrine must now similarly evolve. Comparative negligence applies "[i]n all actions" of this sort, 42 Pa.C.S. § 7102, and its operation benefits injured rescuers in the same way as the rescue doctrine has in the past by lifting the absolute bar of one's contributory negligence.

Furthermore, we note that the strict adherence proposed by the dissent would unfortunately result in denying any recovery to an injured rescuer who acts wantonly yet whose negligence, in, overall causative terms, is nevertheless less than, or equal to, the correlative negligence of the defendant.

9. In his dissent, Judge Cavanaugh views as inconsonant the lower court's instruction as to legal causation and its rescue doctrine instruction. These instructions were clearly offered with respect to *alternative* theories of liability which have been argued before us and addressed herein as such. We see no inconsonance.

OLSZEWSKI, Judge, concurring:

I agree with the well reasoned disposition of the majority except for the final issue dealing with the jury instruction and the Rescue Doctrine. As recited by the lower court and adopted by the majority, appellant's injuries resulted from her attempt to aid appellee. Noticing his car stopped with the engine running and fearing the effects of carbon monoxide poisoning, appellant shut off the engine. Since the car was still in gear at this time, it began to roll, knocking her to the ground and inflicting injuries.

The Pennsylvania Supreme Court, as early as 1900, realized the great regard for human life and the need to safeguard those who attempt to save the life of another. In *Corbin v. Philadelphia*, 195 Pa. 461, 45 A. 1070 (1900), it was determined that:

> The law has so great a regard for human life that it will not impute negligence to an effort to preserve it, if the effort is made with a reasonable regard for the rescuer's own safety ... It is not negligence per se for one to voluntarily risk his own safety or life in attempting to rescue another from impending danger.

Because of this great regard for human life, rescuers often act in the excitement of the moment in ways in which they would not act under calmer circumstances. This is precisely what happened to Mrs. Pachesky.

While I agree with the majority that there was no reversible error, I believe that the jury instruction and the special interrogatories could be shaped to give greater effect to the important policy of encouraging rescue and saving lives which underlies the Rescue Doctrine. I agree that the case to follow is the Wisconsin Supreme Court's decision in *Cords v. Anderson*, 80 Wis.2d 525, 259 N.W.2d 672 (1977), found on page 782 of the majority's opinion. The *Cord's* procedure is to first determine whether plaintiff's actions were reasonable; only if they are unreasonable should the doctrine of comparative negligence come into play. Therefore, in submitting the special interrogatories to the jury, the initial question should be, "was the rescue unreasonable

or unreasonably carried out?" The jury would then be instructed to continue with the remaining interrogatories only if the answer to this first question was "yes."

McEWEN, J., joins.

CAVANAUGH, Judge, dissenting:

I respectfully dissent. As noted by the majority, the trial court charged the jury with respect to the rescue doctrine as follows:

Now, members of the jury, there is a theory of law which you must consider in your deliberations, and that is where a person places another person or himself, where he negligently places another person or himself in a position which in the natural and normal course of events invites rescue, he is liable to the person who comes to his rescue for any injury which that person may suffer in the attempted rescue, provided, of course, that the person who attempts the rescue acts reasonable in attempting to effect that rescue.

The court further charged with respect to contributory negligence.

Now, I have indicated to you what negligence is, but there is another phrase used in these cases that is called contributory negligence. Contributory negligence refers to the plaintiff. It refers to conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause cooperating with the negligence of the defendant in bringing about the plaintiff's harm. Regardless of whether the defendant was negligent, if you find that the plaintiff contributed to the accident by any negligence of his own, then it is said he is guilty of contributory negligence.

In addition, the court charged on negligence as to the defendant and further charged that if negligence be found, it must be a proximate cause of the incident. In so charging, I believe that the court effectively emasculated the

rescue doctrine as it applies to this case. The majority reduces the rescue doctrine to ordinary negligence principles. (Was either part causatively negligent and, if so, what is the percentage of negligence?) In so doing, the majority strips the rescue doctrine of two of the principles upon which it is founded: first that the imperiled person's negligence is actionable even though it be antecedent and, secondly, that the rescuer be excused from a standard of ordinary deliberative care. The majority recognizes that Pennsylvania in 1900 adopted the rescue doctrine and opined that a rescuer could only be barred from recovery by acts on his part which were "unmistakable evidence of his rashness and imprudence." *Corbin v. City of Philadelphia*, 195 Pa. 461, 469, 45 A. 1070, 1072 (1900). To have denied appellant the benefit of this standard in the charge to the jury was, in my opinion, error. Further, I would hold that the court erred in its charge with respect to causation and comparative negligence. Causation is not a separate consideration in determining the applicability of the rescue doctrine. In the first portion of the court's charge above, the jury was correctly told that if one negligently places himself in a position [which invites rescue] he is liable to the person who, coming to the rescue, suffers injury. Thus, the jury must, in order to apply the doctrine, find that one has invited rescue, and that the rescuer has responded to the invitation. If the jury finds that the facts call for the imposition of the doctrine it has necessarily resolved any issue as to causation on the part of the imperiled person. The only remaining question is whether the rescuer acted with rashness or imprudence. *Corbin v. City of Philadelphia, supra; Altamuro v. Milner Hotel, Inc.*, 540 F.Supp. 870 (E.D. Pa. 1972); *Simmons v. Pennsylvania Railroad CO.*, 2 Pa.D. & C.2d 233 (1955).

I would further depart from the majority by holding that there should be no application of comparative negligence since the rescuer is excused from ordinary negligence and there should be no attempt to measure the conduct of the rescuer unless it amounts to rashness or imprudence. On

the other hand, if the jury were to conclude that the rescuer did act with rashness or imprudence there should be no recovery. I recognize that the majority follows existing authority from other jurisdictions in its reliance on *Cords v. Anderson*, 80 Wis.2d 525, 259 N.W.2d 672 (1977); *Ryder Truck Rental, Inc. v. Korte*, 357 So.2d 228 (Fla.Dist.Ct.App. 1978) but I conclude that the rescue doctrine, a unique theory of tort recovery, was not contemplated by and is not covered by the comparative negligence statute. (There are other instances where the comparative negligence statute does not supercede doctrines which permit recovery even in the face of a plaintiff's ordinary negligence—as for example, products liability or cases involving a defendant's willful and wanton misconduct.)

Rather than rely on *Cords, supra,* and *Ryder Truck, supra,* I find the reasoning in a case which refused to follow these authorities far more compelling. *Furka v. Great Lakes Dredge & Dock Co.,* 755 F.2d 1085 (4th Cir. 1985), involved a suit for the death of a seaman who drowned in an attempt to rescue a fellow employee on the Chesapeake Bay. The jury found for plaintiff in the amount of $1,200,000, but also found that the decedent was sixty-five percent contributorily negligent, thus reducing the verdict under applicable federal law to $420,000. Plaintiff appealed, alleging that the trial court committed reversible error when it charged the jury that the decedent's conduct was to be judged by ordinary standards of negligence. The United States Court of Appeals for the Fourth Circuit, reversing on the ground that the charge to the jury, though not objected to by plaintiff, constituted plain and fundamental error, explained:

> The submission to the jury of the question of Furka's contributory negligence without reference to the special context of rescue ignored the very premise upon which appellant's case was based. The instruction in this case failed to inform the jury that no contributory negligence may be inferred from a rescue attempt alone and further that no comparative fault may be assessed unless plain-

tiff's conduct was wanton or reckless. As stated long ago by Justice Cardoza, "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore the reactions of the mind in tracing conduct to its consequences. It recognizes them as normal." *Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (1921).

The common law doctrine of rescue may be succinctly stated: "[T]he law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness." *Scott v. John H. Hampshire, Inc.*, 246 Md. 171, 227 A.2d 751, 753–754 (1967), *quoting Maryland Steel Co. v. Marney*, 88 Md. 482, 42 A. 60, 66 (1898). *See also Altamuro v. Milner Hotel, Inc.*, 540 F.Supp. 870 (E.D.Pa.1982); *Brown v. National Oil Co.*, 233 S.C. 345, 105 S.E.2d 81 (1958); *Andrews v. Appalachian Electric Power Co.*, 192 Va. 150, 63 S.E.2d 750 (1951). When confronted with an emergency, a rescuer "should not be charged with the consequences of errors of judgment resulting from the excitement and confusion of the moment...." *Corbin v. Philadelphia*, 195 Pa. 461, 45 A. 1070, 1074 (1900); *see also Rodgers v. Carter*, 266 N.C. 564, 146 S.E.2d 806, 810 (1966); Restatement (Second) of Torts § 470(1) (1965). In rescue, promptness may be prudence, and reflex may claim the seat of reason.

Whether or not there was a rescue attempt is, of course, a question for the jury. If the jury finds plaintiff engaged in a rescue, there must be evidence of wanton or reckless behavior on plaintiff's part before any fault may be assigned. This is the standard traditionally applied to the conduct of plaintiffs in rescue situations. *See, e.g., Scott v. John H. Hampshire, Inc.*, (standard of "dangerous but not reckless" behavior), 246 Md. 171, 227 A.2d 751, 753, *citing Maryland Steel Co. v. Marney*, 42 A. 60, 66 ("Rashness"); *Brown v. National Oil Co.*, ("wanton or foolhardy"), 233 S.C. 345, 105 S.E.2d 81, 87; *Andrews v. Appalachian Electric Power Co.*, ("rash" or "reck-

less"), 192 Va. 150, 63 S.E.2d 750, 757 *Wagner v. International Ry.* ("wanton"), 232 N.Y. 176, 133 N.E. 437, 438; *Corbin v. Philadelphia,* ("rashness and imprudence"), 45 A. 1070, 1073.

We reject appellee's contention that these policies lose their force under the Jones Act, where the doctrine of comparative negligence applies damages proportionately. It is true that the "wanton and reckless" standard developed under the common law, where contributory negligence was a complete bar to recovery. In some comparative negligence jurisdictions, not in admiralty, the wanton and reckless standard has thus been diluted. *See, e.g., Cords v. Anderson,* 80 Wis.2d 525, 259 N.E.2d 672, 683 (1977); *Ryder Truck Rental, Inc. v. Korte,* 357 So.2d 228 (Fla.App.1978). We do not think that is the appropriate course here. ... The wanton and reckless standard reflects the value society places upon rescue as much as any desire to avoid a total defeat of recovery under common law. Law must encourage an environment where human instinct is not insular but responds to the plight of another in peril. (Footnotes omitted.)

755 F.2d 1088–1089.

The Court of Appeals found no intention on the part of Congress to alter the salutary common law rescue doctrine, as exemplified by *Corbin v. City of Philadelphia, supra,* when Congress provided for the application of comparative negligence in the Federal Employers Liability Act (45 U.S.C. § 53), which was incorporated in the Jones Act (46 U.S.C. § 688). Neither can I find such an abrogative intention on the part of the Pennsylvania legislature when it passed the Comparative Negligence Act, 42 Pa.C.S. § 7102.

I would add that, if in fact, ordinary principles of legal causation apply, I would agree with the majority that the court's charge that "Proximate means immediate, nearest, next in causal connection" was in error. I would, however, also find the error to be harmful so as to merit reversal. In the context of this case, an application of this definition leads inevitably to the conclusion that the negligence of

appellant was the cause of the incident, since her negligence was clearly the most immediate, nearest, next in order and closest in causal connection as compared with the appellee's negligence which was at the time passive in nature. That the jury struggled with the causation issue is demonstrated by the fact that they asked for further instructions as to the meaning of "substantial" and asked for a dictionary.

I would grant a new trial.