Ronald T. BOLE and Susan M. Bole, Appellants

v.

ERIE INSURANCE EXCHANGE, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 23, 2008.
Filed Feb. 27, 2009.

James J. Stuczynski, Erie, for appellant.

William C. Wagner, Erie, for appellee.

BEFORE: KLEIN, POPOVICH and FITZGERALD *, JJ.

OPINION BY KLEIN, J.:

¶1 Ronald T. Bole[1] appeals from the trial court order denying his petition to modify an arbitration award after the arbitrators in a 2–1 vote refused to award him underinsured motorist benefits. Bole suffered serious injuries while responding to call as a volunteer fireman in response to a

---

\* Former Justice specially assigned to the Superior Court.

1. Ronald T. Bole's wife, Susan M. Bole is also a plaintiff for consortium claims but for convenience we will refer to Ronald individually and both plaintiffs as "Bole."

serious automobile accident. The accident was caused by an underinsured motorist who was driving too fast for conditions and hydroplaned in a severe rainstorm. A bridge on Bole's property collapsed in the same rainstorm and Bole was badly injured when he was thrown from the truck he was driving on the way to the accident and the truck crushed him against an I-beam. We reverse and remand for further proceedings.

■■■ ¶ 2 Bole filed a claim to collect underinsured motorist benefits from his own policy. That claim was disputed and was subsequently heard by an arbitration panel which determined Bole was not entitled to benefits because his claim did not fall within the parameters of the rarely invoked "rescue doctrine." The "rescue doctrine" was initially adopted by the Pennsylvania Supreme Court in 1900 in *Corbin v. City of Philadelphia*, 195 Pa. 461, 45 A. 1070 (1900). The Supreme Court said that strict enforcement of principles of contributory negligence should not bar a person from collecting from a negligent party whose actions place someone at risk of imminent death or bodily harm. To recover, the rescuer must only show that his acts were reasonably appropriate and performed in the exercise of ordinary care. *See Bell v. Irace*, 422 Pa.Super. 298, 619 A.2d 365, 369 (1993) (*en banc*); *Pachesky v. Getz*, 353 Pa.Super. 505, 510 A.2d 776 (1986). However, the "rescue doctrine" applies only in special cases and is a narrow exception to the principles of causation. *Bell* at 368.

¶ 3 Our standard of review under the Arbitration Act of 1980 is to modify or correct a finding of arbitrators "where the award is contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment or a judgment notwithstanding the verdict." 42 Pa.C.S.A. § 7302(d)(2).

¶ 4 Because there is no transcript from arbitration it is difficult to ascertain the principles of law applied by the arbitrators. What we do have is the following one paragraph conclusion of two of the three arbitrators, the third being in dissent:

> The undersigned arbitration panel finds against the claimants (Boles) on the basis that the rescue doctrine does not apply to the facts of this case. Claimant was not actively engaged in a rescue as contemplated by *Corbin* and its progeny.

Decision and Order, May 25, 2007.

■■■ ¶ 5 While we believe it *may* be that the facts of this case do not support the application of the rescue doctrine, we disagree that Bole was "not actively engaged in a rescue" at the time of his injury. We remand for the trial court to refer the matter back to the arbitrators for further consideration applying the proper standard of law.

■■■ ¶ 6 The idea behind the rescue doctrine is to free a person who is injured while undertaking a rescue from the narrow standards of "legal" or "proximate" or "factual" cause. For the doctrine to apply the person being rescued must be legitimately perceived to be in danger of death or serious bodily injury. In this case, a call came in that a car had rolled over and the occupants were trapped. This is an emergency situation that risks death or serious bodily injury and encourages rescue.[2] It is not always that rescuers will be on the scene. Therefore, until it is determined that the emergency has passed, the

---

**2.** As it turned out, the injuries suffered in the original accident were not as severe as originally believed. That was not known until paramedics arrived at the scene, well after Bole's accident occurred.

person going to the rescue *is* "actively engaged in a rescue as contemplated by *Corbin* and its progeny," contrary to the statement of the law followed by the majority of the arbitrators. In short, as noted in *Bell,* the "rescue doctrine" is "a narrow **exception** to the ordinary principles of negligence which require a showing of proximate causation." *Bell,* 619 A.2d at 368–69 (emphasis added).

¶ 7 Further, *Bell* instructs us that,

In certain situations where a litigant otherwise would not recover for failure to satisfy the proximate causation requirement, the law supplies another means to meet the requirement through the "rescue doctrine," thereby permitting recovery.

*Bell,* 619 A.2d at 369.

¶ 8 The "other means" referred to is later explained.

'Where a defendant's negligent act, of commission or omission, has created a condition or situation which involves urgent and imminent peril and danger, to life or property, of himself or of others, those acts of negligence are also negligence in relationship to all others ... who may attempt, successfully or otherwise, to rescue such endangered life or property, by any means reasonably appropriate' and performed in the exercise of ordinary care.

*Id.* (internal citations omitted).

¶ 9 In this case, the record shows that the first three prongs of the test are met.

1. The initial driver was negligent.

2. The negligence put the initial driver in danger.

3. Bole was in the act of attempting the rescue (we differ from the arbitrators on this point, as we disagree that under the circumstances the situation was too attenuated to be actively part of the rescue).

4. This leaves the fourth prong for consideration by the arbitrators, who did not reach this point because of their holding with regard to whether Bole was in the act of the rescue. That point is, in the words of *Bell,* was whether Bole exercised "means reasonably appropriate and performed in the exercise of ordinary care."

██ ¶ 10 What constitutes "ordinary care" cannot be viewed in a vacuum but must be considered in the circumstances of the case. When it is necessary to get to an accident scene in a short amount of time, while a rescuer cannot be reckless, he or she is not held to the same standard as he or she would be if on an ordinary drive. Here, the arbitrators must consider if Bole used reasonably appropriate means and ordinary care in rushing to an accident scene in a driving rainstorm.

██ ¶ 11 While foreseeability might not be the test, part of the consideration is the standard question as to whether there is an intervening factor. That relates to the question of whether the injury suffered by the rescuer is sufficiently related to the rescue, assuming the rescuer was using reasonably appropriate means. Prior case law does not address this situation.

¶ 12 Case law mentions situations such as saving a person from a railroad track or saving a child who has fallen through a hole in a bridge. Typically, the hypothetical given is that the rescuer is injured by the passing train or the rescuer is injured in diving in the water to save a child. These are activities that might typically be seen as part of an active rescue. We have already demonstrated that the active rescue encompasses the attempt to reach the site of peril as well.

██ ¶ 13 Although the standard of causation is different under the rescue doc-

trine, as noted in the *Bell* opinion, there still must be a causal connection between the fact that this is a rescue situation and the accident. This might open the rescue doctrine to the concept of intervening factors. Such as: while running to the bridge to save the child, the rescuer is stuck by a stray bullet from a hunter. The rescuer is taking part in the active rescue, but is the bullet an intervening cause of injury too attenuated from the actions of the rescue itself? In another situation, what if the rescuer, still attempting to get to the scene, is stuck by a motorist who has run a red light?[3] While the rescue doctrine removes foreseeability from the equation, does that mean that any and all injuries suffered by a rescuer are automatically covered? We suggest that the arbitrators, in issuing their decision, make findings of fact and discuss the situation as clearly and completely as possible.

¶ 14 We note that in other jurisdictions there is another rule that prevents recovery for "professional" rescuers and would justify denying the motion to modify/correct the majority of the arbitrators that denied underinsured motorist coverage in this case. That is the so-called "fireman's rule." As noted in a footnote to the trial court opinion, Pennsylvania has not adopted the "fireman's rule," *See generally Holpp v. Fez, Inc.*, 440 Pa.Super. 512, 656 A.2d 147 (1995) and *Mull v. Kerstetter*, 373 Pa.Super. 228, 540 A.2d 951 (1988). We note that the application of the fireman's rule is not free from doubt. In *Bell, supra*, this Court found that the rescue doctrine did not apply because plaintiff had arrived after the accident and was just providing post-accident medical care to the pedestrian/victim after imminent peril had ceased. The Court went on to say:

> Because we conclude that the rescue doctrine does not apply in this case it is not necessary for us to decide the questions raised by Appellants whether the rescue doctrine is available to "involuntary," or professional, rescuers. [This is also called the "fireman's rule."]

619 A.2d at 370.

¶ 15 Since *Holpp, supra*, is a 1995 case and specifically holds that the "fireman's rule" or "professional rescuer" rule does not apply, we do have an answer to the question not considered in *Bell v. Irace, supra*, (bracketed language supplied). We also note that in a footnote in *Heil v. Brown*, 443 Pa.Super. 502, 662 A.2d 669, 671 (1995), this Court said that while the fireman's rule did not apply in a land owner case, it might apply in a claim of a police officer against mental health professionals when the officer was injured by a mental health patient who allegedly was not properly monitored. However, this was only *dicta* since this Court also found that the situation was not reasonably foreseeable. While we believe that the "professional rescuer" or "fireman's rule" has not yet been applied in Pennsylvania, it may be useful for the arbitrators to address this issue of law as well.

¶ 16 Order reversed. Matter remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 17 FITZGERALD, J., files a DISSENTING OPINION.

### DISSENTING OPINION BY FITZGERALD, J.:

¶ 1 I respectfully dissent from the learned majority's opinion. Although I

---

3. We are trying to present situations, perhaps somewhat outlandish, that do not closely resemble the current situation because we do not want to poison the well by suggesting any answer.

agree with the majority that the "fireman's rule" is not applicable, I believe the majority expands the rescue doctrine's definition of "rescue" beyond its intended means. Accordingly, I conclude, albeit reluctantly, that Mr. Bole fails to prove the rescue doctrine applies.

¶ 2 As explained by this Court *en banc* in *Bell v. Irace*, 422 Pa.Super. 298, 619 A.2d 365 (1993) (*en banc*), the rescue doctrine acts as a substitute for the proximate-cause element:

> Even though we have found the element of proximate causation unmet as a matter of law, Appellants argue in the alternative that the "rescue doctrine" applies to satisfy the element for them. In very special cases, the law has created a narrow exception to the ordinary principles of negligence which require a showing of proximate causation. In certain situations, where a litigant otherwise would not recover for a failure to satisfy the proximate causation requirement, the law supplies another means to meet the requirement through the "rescue doctrine," thereby permitting recovery.

*Id.* at 368–69.

¶ 3 A recitation of the *Bell* Court's application of the rescue doctrine is particularly pertinent to the instant case. Appellant Sharen Bell was an emergency medical technician (EMT) who was called to an accident scene after the appellee, John Irace, struck the appellee, Elizabeth Reis. Both appellees were negligent in causing the accident. Bell administered first aid to Reis, who, by reacting to her injuries, severely injured Bell's arm, wrist, and hand. An *en banc* panel of this Court, after determining that Bell failed to offer sufficient facts to justify a finding of proximate cause, unanimously held that the rescue doctrine did not apply. In so holding, this Court stated the applicable standards:

> The rescue doctrine, though infrequently cited, has been applied in cases where a plaintiff is injured while "rescuing" a defendant from a perilous situation created by the defendant's own negligence. "Where a defendant's negligent act, of commission or omission, has created a condition or situation which involves urgent and imminent peril and danger, to life or property, of himself or of others, those acts of negligence are also negligence in relationship to all others who ... may attempt, successfully or otherwise, to rescue such endangered life or property, by any means reasonably appropriate" and performed in the exercise of ordinary care.

> * * *

> In order to constitute a "rescue," a person must attempt to prevent another person from suffering serious injury or death. In addition, the situation precipitating the "rescue" must warrant a reasonable belief that the peril facing the object of the rescue was urgent and imminent. There can be no reasonable belief of continued peril if the rescuer has knowledge that the victim's condition is stable, requiring only medical attention.[ ] These principles are clear from an examination of the facts in cases where the rescue doctrine was applied.

*Id.* at 369 (citations and some quotations omitted; alteration in original). After considering these factors, along with other cases in which the rescue doctrine did apply, the *Bell* Court concluded:

> The allegations in the complaint do not indicate the severity of Ms. Reis' injuries, whether her injuries were life-threatening, or whether Ms. Reis was conscious or in any immediate danger. Appellants' allegation that Sharen Bell was "providing aide [sic] to Defendant REIS" does not suggest that Sharen

Bell acted to prevent death or serious bodily harm to Ms. Reis.

Furthermore, Sharen Bell was not injured while attempting a heroic rescue **of the nature contemplated by the rescue doctrine.** She arrived upon the scene **after** the accident had occurred and was injured while providing post-accident medical care to the pedestrian/victim. The rescue doctrine does not apply where, as here, a plaintiff gave assistance after the imminent peril had ceased.

*Id.* at 370 (first emphasis added) (citation omitted).

¶ 4 Instantly, it is important to note that Mr. Bole was not called to respond as a rescuer in the literal sense. He was, in effect, acting as an EMT responder, similar to Sharen Bell. According to his own statement of the facts:

> Mr. Bole was 3.2 miles from the site of the accident and in responding, was to stop briefly at the station in McKean (which was directly on his route to the accident scene) and then proceed with the ambulance as long as there was another individual to man same. If no other fire department personnel arrived within 5 minutes, he was to proceed to the accident scene in his vehicle.

Appellants' Brief, at 7. Although I do not question the urgency by which Mr. Bole felt compelled to respond, the facts indicate that: (1) Mr. Bole was not to respond directly to the accident scene, but rather report to the station to pick up an ambulance; (2) Mr. Bole was required to wait five minutes in the hope that a second individual would arrive at the station before he could leave with the ambulance; (3) other responders, by virtue of their geographic location, were responsible for going to the scene directly and performing the physical act of rescue; and (4) Mr. Bole's responsibility was to assist in providing medical care.[1] By virtue of the fact that Mr. Bole was not to report directly to the scene and by his being required to wait five minutes if another responder was not at the station, I would conclude that his presence at the scene would not have cured a "peril facing the object of the rescue [that] was urgent and **imminent.**" *Bell,* 619 A.2d at 369 (emphasis added). Just like Sharen Bell, Mr. Bole would have arrived at the scene after the accident and provided post-accident medical care "after the imminent peril had ceased." *See id.* at 370.

¶ 5 In my view, the instant case reflects why the rescue doctrine must be the narrowest of exceptions to the proximate-cause element. I believe that with the majority's application of the rescue doctrine to Mr. Bole's case, the doctrine no longer becomes the narrow exception it was meant to be. While I agree with the majority that a "rescue encompasses the attempt to reach the site of the peril," Majority Op. at 1020, the majority acknowledges that such expansion is limited to an "active rescue." *See id.* As the *Bell* Court observes, there exists a difference between an "active rescue" and "post-accident medical care." *Bell,* 619 A.2d at 370. Bole's own statement of the facts pertaining to his anticipated role at the accident scene, unfortunately, places him in the latter category. It appears that, based on the procedure as quoted above from Mr. Bole's brief, his presence was not absolutely necessary to save the victims' lives. Not only would Mr. Bole have acted primarily as an ambulance driver, but it appears that another responder could have taken the ambulance to the scene without

---

1. Because I do not consider it necessary, I offer no comment as to whether Mr. Bole, by residing in such a location that would require a dangerous trek to the station, automatically disqualified himself from the rescue doctrine.

Mr. Bole, provided that the responder waited five minutes. Accordingly, Mr. Bole's role was not that of an active rescuer, but rather to provide post-accident medical care.

¶ 6 Finally, the majority suggests that the arbitrators, upon remand, should consider whether intervening factors affect the applicability of the rescue doctrine. Presumably, the majority's concern focuses on Mr. Bole's statement that he has crossed the bridge in question many times in adverse conditions, but acknowledged that "[in] daylight, [he] would have certainly seen the problem with his bridge and if he still drove forward, this would constitute a super[s]eding cause." Appellants' Brief, at 29. These facts would be crucial because Mr. Bole may have had time to assess whether the bridge was safe to cross, knowing that an ambulance should arrive at the scene regardless of whether he made it or not. By driving through a "blinding rain" on a bridge with which he was very familiar, but which he should have known was easily subject to flooding, his actions, though brave and heroic, may not have been "reasonably appropriate," or showed the "exercise of ordinary care." *Bell*, 619 A.2d at 369 (quoting *Pachesky v. Getz*, 353 Pa.Super. 505, 510 A.2d 776, 781 (1986)).[2] Such vast considerations, however, are what I believe the rescue doctrine was intended to avoid. The doctrine itself was intended to be a relatively simple factor of a negligence claim, allowing plaintiffs to avoid the complexities of proving proximate cause. We may easily adjust our perspective of "ordinary care," as the majority suggests, when a person jumps into the water to save a drowning person, because the disregard for ordinary care

was absolutely necessary to prevent imminent death. Opening the rescue doctrine to those providing post-accident medical care, however, unnecessarily complicates what is supposed to be a relatively simple analysis, as indicated by the majority's instructions to the arbitrators that it consider intervening factors.

¶ 7 I commend Mr. Bole for his concern for the victims and his devotion to his duties as a fireman, and I certainly do not suggest that Mr. Boles was acting in any manner other than that which is most honorable and deserving of praise. However, I am constrained to conclude, based on the traditional concepts of the doctrine and this *en banc* Court's mandates, that the rescue doctrine does not apply to Mr. Bole's case. Accordingly, I must respectfully dissent from the majority's decision.

---

**2.** I do not mean to suggest, on the other hand, that such facts are not a reasonably foreseeable result and that Mr. Bole could not consequently prove proximate cause in the ordinary-negligence context. Because Mr. Bole raises his claim only under the context of the rescue doctrine, I find only that he fails to prove that the rescue doctrine should substitute for the proximate-cause element.